IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MANI KUMARI SABBITHI, JOAQUINA QUADROS, and GILA SIXTINA FERNANDES,<br><br>          Plaintiffs,<br><br>v.<br><br>MAJOR WALEED KH N. S. AL SALEH, MAYSAA KH A. O. A. AL OMAR, and STATE OF KUWAIT,<br><br>          Defendants. | Case No.: 07-CV-00115-EGS |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' SUR-REPLY

In accordance with the Court's order of November 19, 2007, Defendants Waleed KH N. S. Al-Saleh and Maysaa KH A. O. Al-Omar ("Defendants"), through undersigned counsel, respectfully submit this Response to Plaintiffs' Sur-Reply in Further Opposition to Defendants' Motion to Dismiss and to Quash Service of Process.[1]

In their Sur-Reply, Plaintiffs claim that, because Defendants are no longer present in the United States, they have been stripped of their diplomatic immunity for the acts alleged in the Complaint. Plaintiffs are incorrect. Defendants' departure from the United States does not change the immunity analysis one bit. Defendants are immune from suit for claims stemming from their activities as part of Kuwait's diplomatic mission to the United States while they are in the United States and after they depart. In addition, Defendants' departure from the United States does not change the fact that Plaintiffs' attempt to serve process on Defendants was void because of their undisputed status as a diplomat and his wife at that point in time.

---

[1] In filing this Response, Defendants do not submit to the jurisdiction of this Court. Defendants expressly reserve all privileges and immunities, as well as all objections to jurisdiction and service of process.

## I. DEFENDANTS REMAIN IMMUNE FROM SUIT.

In their Sur-reply, Plaintiffs claim that the "any immunities conferred on the Individual Defendants by the Vienna Convention on Diplomatic Relations ceased when the Individual Defendants' diplomatic functions in the United States came to an end and they returned to Kuwait." (Sur-Reply at 2-3.) They are mistaken.

Plaintiffs cite to Article 39(2) of the Vienna Convention to support their argument that Defendants' immunity ceased when they departed the United States. They fail to acknowledge, however, that Article 39(2) expressly provides that "with respect to acts performed by such a person in the exercise of his functions as a member of the mission, immunity shall continue to subsist." Vienna Convention on Diplomatic Relations ("Vienna Convention"), Art. 39(2), 23 U.S.T. 3227, T.I.A.S. 7502 (1961). The Plaintiffs allege damages against Defendants on the basis of acts performed in the course of their service as members of Kuwait's diplomatic mission to the United States. Under Article 39(2), Defendants therefore remain immune from those claims even after departing the United States. Plaintiffs simply ignore that key provision.

### A. This Court Dismissed Claims Against a Former Diplomat in an Analogous Case.

Plaintiffs also ignore a prior case in which this Court recognized a diplomat's residual immunity under Article 39(2) in analogous circumstances.[2] In *Knab v. Republic of Georgia et al.*, No. 97CV3118, 1998 WL 34067108 (D.D.C. 1998) (Hogan, J.), the defendant, a former Georgian diplomat, had plead guilty to criminal charges resulting from a fatal car accident after the Georgian government waived his criminal immunity. *Id.* at *1. After he had been incarcerated pursuant to his guilty plea, and therefore had ceased functioning as a diplomat, the defendant was served with a civil complaint raising claims that arose out of the accident. He

---

[2] Despite its clear relevance to the issue they raised, Plaintiffs failed to cite or attempt to distinguish this case.

2

moved to dismiss on the grounds of diplomatic immunity. *Id.* at *1-2. The plaintiff argued that, under Article 39 of the Vienna Convention, the former diplomat's immunity "no longer shields him from liability, because he has ceased to perform diplomatic functions." *Id.* at *2. The Court rejected this argument and held that the defendant had "residual immunity" from suit under Article 39(2) even though his "diplomatic functions [had] ceased."

In reaching this holding, the Court noted that "some courts have suggested that a diplomat is always acting within the scope of his employment," and that, in any event, the plaintiff had not contended that the accident in question occurred outside the scope of the defendant's diplomatic functions. Id. at *4 & n.3. Rather, the Court noted, the complaint itself "explicitly asserts that [the defendant] was acting within the scope of his duty." *Id.* at *4. The court therefore concluded that, even though "[i]t is undisputed that defendant Makharadze no longer performs diplomatic functions in this country . . . [t]here is no reason to suppose that this accident lies outside the protection of defendant's residual immunity. For this reason, defendant's current status does not affect the force of his immunity from civil jurisdiction." *Id.*

As in *Knab,* there is no reason here to suppose that the acts at issue in this suit "lie[] outside the protection of defendant's residual immunity." Like the plaintiffs in *Knab*, Plaintiffs here made no such argument, and there is no reason why a car accident would be considered to fall within the scope of a diplomat's duties while his employment of domestic help would not. Both are incidental to his status and function as a diplomat. In fact, the Fourth Circuit has specifically held that "[d]ay-to-day living services" such as those provided by domestic workers "were not meant to be treated as outside a diplomat's official functions." *Tabion v. Mufti*, 73 F.3d 535, 539 (4th Cir. 1996); *accord Gonazalez Paredes v. Vila*, 479 F.Supp. 2d 187, 193 (D.D.C. 2007).

Also as in *Knab*, Plaintiffs' attempt to avoid the application of Defendants' residual immunity for acts within the scope of their diplomatic functions is inconsistent with their Complaint. Plaintiffs repeatedly claim in the Complaint that that the State of Kuwait is vicariously liable for Defendants' actions *precisely because the allegations fall within the scope of Defendants' diplomatic duties for the State*. (*See* Compl. ¶ 128; *see also* ¶¶ 135, 142, 176, 191, 198, 204, 211.) The Court in *Knab* found "no reason to suppose that this incident lies outside the protection of defendant's residual immunity," where "the Amended Complaint explicitly asserts that [the defendant] was acting within the scope of his duty." 1998 WL 34067108 at *4. As in *Knab*, therefore, Plaintiffs' own allegations that the Defendants were acting within the scope of their diplomatic duties demonstrate that the activities that are the subject of the suit lie within the protection of their residual immunity.

Therefore, consistent with this Court's holding in *Knab*, Defendants remain immune from suits arising out of their employment of domestic workers while they were serving as diplomats (or more accurately, a diplomat and his wife) in this country, even if they have now left the country.

**B. Courts Have Recognized an End to Immunity Only Where The Proceedings Did Not Concern Acts Within the Defendants' Diplomatic Functions.**

To support their argument that Defendants' departure from the United States somehow affects their immunity from this suit, Plaintiffs cite two cases where courts recognized an end to diplomatic immunity and allowed the judicial process to proceed. (Sur-reply at 3 (citing *United States v. Guinand*, 688 F. Supp. 774 (D.D.C. 1988) (Gasch, J.); *In re Noboa*, No. M19-111, 1995 WL 581713 (S.D.N.Y 1995).) In both of those cases, however, the subject of the proceeding was clearly unrelated to the diplomats' official functions.

4

In *Guinand*, the court permitted criminal drug charges to proceed where the defendant, a former diplomat, had "failed to depart from the United States within a reasonable time" after he had been caught distributing cocaine and the Peruvian Embassy had therefore terminated his employment. 688 F.Supp. at 774. The court explicitly recognized that, even though the defendant had been stripped of his status as a diplomat, diplomatic immunity continued for "acts performed in the exercise of the [diplomat's] functions," *id.* at 775, but assumed that the distribution of cocaine was not an act performed in the exercise of diplomatic functions.[3] As noted above, however, the Fourth Circuit has held – and this Court recently agreed – that the employment and receipt of services from domestic workers, in contrast, "were not meant to be treated as outside a diplomat's official functions." *Tabion*, 73 F.3d at 539; *accord Gonazalez Paredes*, 479 F.Supp. 2d at 193. Thus, if Defendants were immune from claims arising out of these activities while they were in the United States, they remain immune from such claims even after they have departed the United States.

In *Noboa*, a New York district court held merely that a "cultural counselor" to the Government of Ecuador visiting the United States was not entitled to diplomatic immunity from a subpoena compelling the production of documents in relation to her deceased husband's property in New York. 1995 WL 581713 at *3-4. The primary basis for this holding was the specific exception to immunity provided in Article 31 of the Vienna Convention covering "an action relating to succession in which the diplomatic agent is involved as . . . [an] heir or legatee as a private person and not on behalf of the sending state." *Id.* at *3. Accordingly, the court held that the suit in question was "precisely the type that is exempted from diplomatic immunity." *Id.*

---

[3] Indeed, even aside from the illegality of the act, selling drugs on the side of one's employment as a diplomat is precisely the type of outside business activity that would almost certainly fall within the commercial activity exception to a diplomat's civil immunity. *See Tabion*, 73 F.3d at 537 (noting that the commercial exception to diplomatic immunity would apply where a diplomat engages in "trade or business activity . . . for a personal profit").

The court also noted that the respondent had been visiting the U.S. on personal, not diplomatic business, when she was served with the subpoena. *Id.* at *4. While the court further supported its decision by noting that the respondent had, in any event, since resigned from her post as an Ecuadorian "cultural counselor," it also cited the language from the Vienna Convention noting that immunity would "continue to subsist" for "acts performed . . . in the exercise of [a diplomat's] functions as a member of the mission." *Id.* at *4. There was no suggestion, however, that this language might be applicable as the suit did not concern "acts" the former diplomat had "performed," but rather merely the production of evidence concerning her deceased husband's estate. *See id.* Thus, as in *Guinand*, the residual immunity provision of Article 39(2) was plainly inapplicable. For that reason, Plaintiffs' cases have no relevance here.

## II. DEFENDANTS' MOTION TO QUASH SERVICE IS UNAFFECTED BY THEIR DEPARTURE FROM THE UNITED STATES.

Defendant's Motion to Quash Service of Process is also unaffected by the change in Defendants' location. It is undisputed that at the time during which all of the acts in this case were alleged to have taken place, including the purported service of process, Defendants were present in the United States as an accredited diplomat and his wife. Plaintiffs purported to serve Defendants on January 24, 2007, the State Department certified Defendants' diplomatic status on March 14, 2007,[4] and, as the Plaintiffs assert in the Complaint, "[a]t all times relevant hereto, Defendant Al Saleh was stationed in Washington, D.C. as an Attaché to the Embassy if Kuwait." (Compl. ¶ 9.) As discussed in Defendants' Motion to Dismiss and Quash Service of Process, Defendants' undisputed diplomatic status at the time the complaint was filed and plaintiffs

---

[4] *See* Mot. to Dismiss, Ex. 2.

attempted to effect service of process on Defendants rendered service *void*. (Mot. to Dismiss at 6 (citing *Aidi v. Yaron*, 672 F.Supp. 516, 517-18 (D.D.C. 1987).) That fact remains unchanged.[5]

## Conclusion

For all these reasons and those set forth in Defendants' Motion and Reply, the Court should quash service of process and dismiss the case.

Respectfully Submitted,

/s/   Thomas B. Wilner
Thomas B. Wilner (D.C. Bar # 173807)
Amanda Shafer Berman (D.C. Bar # 497860)
Justin Harrison (D.C. Bar # 502069)
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2634
Telephone:  (202) 508-8000
Facsimile:  (202) 508-8001

Dated: December 5, 2007

---

[5] Because service of process was void due to Defendants' diplomatic status at that time, even if this Court were to hold that Defendants were no longer immune from suit, Plaintiffs would then be required to serve Defendants anew in order to pursue an action against them – as Plaintiffs themselves apparently recognize. (Sur-reply at 3 (requesting permission to re-serve Defendants in Kuwait).) Contrary to Plaintiffs' suggestion, however, they cannot do so in the context of *this* action, as Fed. R. Civ. Pro. 4(m) requires that service be effected within 120 days of the filing of a complaint. Plaintiffs cite no authority for their novel proposition that the court could or should give Plaintiffs the opportunity to cure their previous ineffective service of process by simply allowing the Plaintiffs to start over and re-serve Defendants in Kuwait at this late date. Therefore, even if this Court were to conclude that Defendants were no longer immune from suit, Plaintiffs would have to refile their complaint and serve Defendants anew within the requisite time period

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of December 2007, I have caused to be served, via U.S. Mail, a copy of the foregoing Response to Plaintiffs' Sur-reply, on the following:

Rebecca P. Dick
David A. Kotler
Catherine J. Rosato
Reid K. Weisbord
DECHERT LLP
1775 I Street, N.W.
Washington, D.C. 20006

Lenora M. Lapidus
Claudia M. Flores
Jennifer L. Pasquarella
ACLU FOUNDATION
WOMEN'S RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004

Steven M. Watt
ACLU FOUNDATION
HUMAN RIGHTS PROGRAM
125 Broad Street, 18th Floor
New York, NY 10004

/s/ Amanda Shafer Berman
Amanda Shafer Berman (D.C. Bar # 497860)
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2634
Telephone: (202) 508-8000
Facsimile: (202) 508-8001