**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|   |   |   |
|---|---|---|
| MANI KUMARI SABBITHI, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 07-115 (EGS) |
| v. | ) | |
| | ) | |
| MAJOR WALEED KH N.S. AL SALEH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiffs Mani Kumari Sabbithi, Joaquina Quadros, and Gila Sixtina Fernandes, domestic workers from India, bring this action against their former employers Major Waleed KH N.S. Al Saleh ("Al Saleh"), his wife, Maysaa KH A.O.A. Al Omar ("Al Omar"), (collectively "Individual Defendants"), and the State of Kuwait.[1] Plaintiffs bring suit under the Trafficking Victims Protection Act of 2000 ("TVPA"), 18 U.S.C. §§ 1581, *et seq.*, the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, and assert various contract and tort claims.[2] Plaintiffs, who worked in the

---

[1] Kuwait is a foreign state as defined in the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602, *et seq*. *See* Compl. ¶ 11.

[2] Plaintiffs allege breach of contract, quantum merit, unjust enrichment, fraud and constructive fraud, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, assault, battery, and civil conspiracy.

1

Individual Defendants' home for many years, claim that Kuwait is liable for materially and practically assisting the Individual Defendants in the alleged offenses.  Plaintiffs also seek to hold Kuwait liable under an agency theory for the actions of its employee, Defendant Al Saleh, and his wife, Defendant Al Omar.  Compl. ¶ 3.  The Court granted Individual Defendants' motion to dismiss in *Sabbithi v. Al Saleh,* 605 F. Supp. 2d 122 (D.D.C. 2009), and they are no longer parties in this action.  Pending before the Court is Kuwait's motion to dismiss.  Upon consideration of the motion, the responses and replies thereto, the *amici curiae* brief and response thereto, the Statement of the United States and responses thereto, and the applicable law, the Court **GRANTS** Kuwait's motion to dismiss.

I.  **BACKGROUND**

Individual Defendant Al Saleh is a Kuwaiti diplomat.  Al Saleh and his wife, Individual Defendant Al Omar, lived in the United States from 2005 to 2007, while Al Saleh served as Attaché to the Embassy of Kuwait.  *See* Compl. ¶ 9; *see also* Pls.' Surreply 2.  Prior to moving to the United States, the Individual Defendants employed plaintiffs as domestic workers in their home in Kuwait.  Plaintiffs worked for the Individual Defendants in Kuwait for a period ranging from eight and a half months to five and a half years.  *See* Compl. ¶¶ 16-46.  In Kuwait, plaintiffs allegedly worked seven days a week for long hours each day, and

were paid between 35 Kuwaiti Dinar (KD) (approximately 121 U.S. dollars) and 40 KD (approximately 138 U.S. dollars) per month. *Id.* According to plaintiffs, however, before coming to the United States the Individual Defendants signed an employment contract promising to pay plaintiffs $1,314 per month and agreeing to comply with U.S. labor laws in exchange for plaintiffs' domestic work in the Individual Defendants' home in the United States. *Id.* Plaintiffs assert that these employment contracts were presented to the U.S. Embassy in Kuwait for the purpose of obtaining plaintiffs' A-3 visas, which authorized plaintiffs to work as live-in domestic servants in the Individual Defendants' home in McLean, Virginia. *Id.* The A-3 visa applications were authorized by Kuwait. *Id.* ¶ 107.

Plaintiffs claim that once in the United States, the Individual Defendants did not comply with the terms of the employment contracts. Allegedly, plaintiffs worked sixteen to nineteen hours per day, seven days a week, and were not paid directly, but instead the Individual Defendants sent wages of 70 KD (approximately 242 U.S. dollars) to 100 KD (approximately 346 U.S. dollars) per month to plaintiffs' families overseas. *See id.* ¶¶ 47-93. Plaintiffs allege that the Individual Defendants deprived them of their passports, threatened plaintiffs with physical harm, and physically abused Plaintiff Sabbithi. *Id.* Plaintiffs also allege that Kuwait had knowledge that its

diplomats were abusing their domestic staff, and that the U.S. Department of State ("State Department") specifically warned Kuwait that the Kuwaiti government would be held responsible for the conduct of its diplomats. *See id.* ¶¶ 113-116. Plaintiffs claim that Kuwait failed to take affirmative steps to monitor its diplomats' conduct in the United States as requested by the State Department. *See id.* ¶ 117.

Plaintiffs eventually escaped the Individual Defendants' home and, on January 18, 2007, plaintiffs filed a complaint against the Individual Defendants and Kuwait. In addition to this civil action, plaintiffs pursued criminal charges against the defendants through the U.S. Department of Justice ("DOJ"). Pursuant to the DOJ's request, the State Department asked Kuwait to waive the Individual Defendants' diplomatic immunity. Pls.' Surreply Ex. A. According to the State Department, Kuwait declined to waive the Individual Defendants' immunity. *Id.* As a result, the DOJ closed its investigation into the Individual Defendants' alleged illegal conduct. *Id.*

On March 30, 2007, the Individual Defendants filed a motion to dismiss and to quash service. On July 18, 2007, the Court granted Break the Chain Campaign, Casa of Maryland, Inc., Asian American Legal Defense and Education Fund, Global Rights, and Boat People SOS, Inc. leave to file as *amici curiae*. On March 20, 2008, this Court invited the State Department to submit its

views regarding this case.  The State Department responded on July 22, 2008.[3]  On July 31, 2008, the Individual Defendants filed a renewed motion to dismiss and to quash service of process.  In a Memorandum Opinion and Order dated March 20, 2009, this Court granted the Individual Defendants' motion to dismiss.  In granting the Individual Defendants' motion, this Court found that (1) the Individual Defendants were entitled to diplomatic immunity and could not be sued in the United States; (2) hiring domestic employees is an activity incidental to the daily life of a diplomat and his or her family, and does not constitute commercial activity outside a diplomat's official function; (3) plaintiffs' constitutional claims must also give way to the Individual Defendants' diplomatic immunity; (4) the Individual Defendants' conduct did not constitute human trafficking, and thus no *jus cogen* norm was at issue; (5) the TVPA does not override diplomatic immunity; and (6) the Individual Defendants' departure from the United States does not affect their immunity from civil jurisdiction.  *See Sabbithi*, 605 F. Supp. 2d at 125-30.  On November 11, 2008, Kuwait filed this motion to dismiss.

**II. DISCUSSION**

---

[3] In its Statement of Interest, the State Department opined that employment of a domestic worker does not constitute "commercial activity" under Article 31(1) of the Vienna Convention on Consular Relations and that the TVPA does not override diplomatic immunity.  Accordingly, in *Sabbithi*, this Court granted the Individual Defendants' motion to dismiss on the basis of diplomatic immunity.  *See* 605 F. Supp. 2d at 125-30.

Kuwait argues that this Court lacks personal jurisdiction over Kuwait because plaintiffs did not properly serve Kuwait in accordance with the Foreign Sovereign Immunity Act of 1976 ("FSIA"), 28 U.S.C. §§ 1602, *et seq*. Additionally, Kuwait argues that this Court lacks both subject matter and personal jurisdiction because Kuwait is immune from suit under the FSIA. Plaintiffs contend that service was effected pursuant to FSIA and that this Court has jurisdiction under both the commercial activity and tort exceptions to the FSIA. Because this Court finds that plaintiffs failed to properly effect service under the FSIA, the motion to dismiss is **GRANTED**.

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in a United States court." *Nikbin v. Islamic Republic of Iran*, 471 F. Supp. 2d 53, 58 (D.D.C. 2007) (citing 28 U.S.C. § 1330, and *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989)); *see also* Fed. R. Civ. P. 4(j)(1) ("A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608."). The Court may proceed to consider the merits of a claim against a foreign state only if the foreign state is properly served under the statute. *See Nikbin*, 471 F. Supp. 2d at 59. "28 U.S.C. § 1608(a) provides for service in courts of the United States upon a foreign state by four alternative means, each . . . available only if the previously enumerated options

are in some way foreclosed." *Dem. Rep. Congo v. FG Hemisphere Assoc.*, 508 F.3d 1062, 1063 (D.C. Cir. 2007).  Strict adherence to the statute is required.  *See Transaero v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994).

Section 1608(a) provides as follows:

(a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

>    (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
>    (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
>    (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
>
>    (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services – and the Secretary shall

> transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.
>
> As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.

28 U.S.C. § 1608(a). Plaintiff may not choose among these methods. *See Doe I v. State of Israel*, 400 F. Supp. 2d 86, 101 (D.D.C. 2005). "The plain language of § 1608(a) makes clear that the FSIA lists the methods in descending order of preference; a plaintiff may only attempt service through the second method, for example, if service through the first method is unavailable or has proven unsuccessful." *Id.* "Leniency in this case would disorder the statutory scheme." *Transaero*, 30 F.3d at 154.

Plaintiffs filed this lawsuit on January 18, 2007. Plaintiffs contend that they attempted to effect service on Kuwait under the first method but that Kuwait refused service. Plaintiffs then argue that they effected service under § 1608(a)(2), the second method, on March 13, 2007, but they acknowledge that they did not receive a certificate from the Kuwaiti Ministry of Justice acknowledging service in accordance with the Hague Convention.[4] *See Doe I*, 400 F. Supp. 2d at 101-02

---

[4] The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters, Nov. 15, 1965, art. 3, 20 U.S.T. 361, 658 U.N.T.S., is the applicable international convention referred to in § 1608(a)(2).

(describing service in accordance with § 1608(a)(2) in accordance with the Hague Convention). Plaintiffs admit, moreover, that a properly executed summons was not served on Kuwait until August 2008 through diplomatic channels, the fourth method. *See* Pls' Opp'n at 10 n.6. This concession is fatal to plaintiffs' claims. "Neither substantial compliance with § 1608(a)'s requirements nor actual notice of the suit excuses plaintiffs' deviation from the section's mandates." *Doe I*, 400 F. Supp. 2d at 102 (citing *Transaero*, 30 F.3d at 153-54). "Because plaintiffs have not effectuated service pursuant to § 1608(a)(2), the methods in §§ 1608(a)(3) and (a)(4) are not available to them, and the suit against [Kuwait] fails for want of proper service." *Id.*; *see also Transaero*, 30 F.3d at 154.

Kuwait also argues that this Court lacks subject matter and personal jurisdiction because Kuwait is immune from suit under the FSIA. The Court need not address these arguments given the Court's finding that plaintiffs did not properly effect service.

### III.  CONCLUSION

Accordingly, for the reasons set forth above, the Court **GRANTS** Kuwait's motion to dismiss. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **June 11, 2009**