IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MANI KUMARI SABBITHI, JOAQUINA QUADROS, and GILA SIXTINA FERNANDES,<br><br>Plaintiffs,<br><br>v.<br><br>MAJOR WALEED KH N. S. AL SALEH, MAYSAA KH A. O. A. AL OMAR, and STATE OF KUWAIT,<br><br>Defendants. | Case No. 07-CV-00115-EGS |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN RESPONSE TO KUWAIT'S ARGUMENTS <u>REGARDING SERVICE</u>**

Pursuant to this Court's orders of February 18 and March 4, 2010, Plaintiffs Mani Kumari Sabbithi, Joaquina Quadros, and Gila Sixtina Fernandes ("Plaintiffs") file this supplemental brief explaining why Kuwait has been properly served under the applicable provisions of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ l330, l332(a), l39l(f) and l60l-l6ll (1976) (the "FSIA") and the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 (the "Hague Service Convention").

**BACKGROUND**

On March 13, 2007, Plaintiffs attempted to serve Kuwait pursuant to § 1608(a)(2) of the FSIA by forwarding a copy of the complaint and an unexecuted summons to Kuwait's Ministry of Justice. *See* Ps' Opp. to Mot. to Dismiss, at 10 n.6 (Dkt. No. 71, January 12, 2009). This particular method of service through a Central Authority is provided for under Article 2 of the

Hague Service Convention, and is one of several alternative methods provided for under that convention. The complaint and summons were received by Kuwait on March 25, 2007.[1] Under the Hague Service Convention, if service is objectionable or improper, a foreign state must "promptly inform the applicant and specify its objection to the request" and provide a certificate that "set[s] out the reasons which have prevented service." Hague Service Convention arts. 4, 6. Plaintiffs never received any notice from Kuwait that service was objectionable or any certificate setting forth the reasons that service was not accomplished. Instead, only after Plaintiffs subsequently attempted service through diplomatic channels in August 2008 did Kuwait, through its counsel, argue that service was faulty because the summons sent on March 25, 2007 was unexecuted. In other words, rather than follow protocol under the Hague Service Convention, Kuwait chose to ignore Plaintiffs' March 25, 2007 attempt at service altogether and to instead wait until more than *one and half years* later to dispute the propriety of that service. *See* Defendant The State of Kuwait's Rule 12(b)(1) Motion to Dismiss at 1 (Dkt. No. 65, Nov. 21, 2008). Even then, and *to this day*, Kuwait itself has not informed Plaintiffs that it would not accept their initial service packet sent on March 25, 2007 or otherwise certified that the 2007 service on its Ministry of Justice was defective in any way, as Kuwait was required to do under the Hague Service Convention.

---

[1] Kuwait claims that Plaintiffs "could not have been telling the truth about delivering a copy of the summons to Kuwait's Ministry of Justice on March 25, 2007." Supplemental Brief in Support of Defendant State of Kuwait's Motion to Dismiss ("Kuwait's Supp. Br.") at 2 (Dkt. No. 106, Apr. 15, 2010). However, the parties' Joint Status Report submitted on December 4, 2007 confirms that a summons was indeed served on Kuwait as Plaintiffs claim. Exhibit A to that Joint Status Report is a copy of the "Request for Service Abroad of Judicial or Extrajudicial Documents" that was sent to Kuwait, along with a Federal Express receipt confirming delivery on March 25, 2007. *See* Joint Status Report, Ex. A at 5-6 (Dkt. No. 37, Dec. 4, 2007). The Request for Service states that "[t]he undersigned applicant has the honour to transmit-in-duplicate the items listed below" and lists among the documents being transmitted the "Summons in a Civil Case." *Id.*, Ex. A at 5. Thus, Kuwait's accusations regarding Plaintiffs' failure to serve any summons at all prior to 2008 are belied by the record in this case.

Having received no response from Kuwait's Ministry of Justice, Plaintiffs again served Kuwait, this time through diplomatic channels under Article 9 of the Hague Service Convention, on August 17, 2008.  *See* Return of Service/Affidavit & Diplomatic Note (Dkt. Nos. 57 & 57-1, Sept. 19, 2008).[2]  There is no dispute that Kuwait's Ministry of Foreign Affairs received a copy of the summons and complaint, notice of suit, and a diplomatic note with Arabic translations on August 17, 2008.  Although Plaintiffs initially intended this August 2008 service through diplomatic channels to satisfy the requirements of 28 U.S.C. § 1608(a)(4), it also constituted effective service under the requirements of § 1608(a)(2).  On February 18, 2010, this Court reached this very conclusion, holding that "plaintiffs satisfied the second enumerated method of service under the Foreign Sovereign Immunities Act (the "FSIA") by serving Defendant Kuwait in accordance with Article 9 of the Hague Service Convention."  (Minute Order, Feb. 18, 2010).[3]

## ARGUMENT

Kuwait's position on service in this case contradicts the plain text of the FSIA and the Hague Service Convention and flies in the face of other authority permitting precisely the type of service effectuated here.  Further, as Plaintiffs have now repeatedly pointed out, Kuwait has had *actual notice* of this lawsuit for over three years and should not be permitted to avoid suit on the technical ground that Plaintiffs' first attempt at service was improper, particularly in view of Kuwait's own complacence and failure to follow treaty protocol and in view of case law establishing that there is no time limit for service on a foreign sovereign.  Where, as here, service has been and can be accomplished in accordance with the FSIA's service provisions, dismissal for failure of proper service is inappropriate.

---

[2] As set forth herein, service pursuant to diplomatic channels is an effective method of service under both the FSIA's second and fourth methods of service.  *See infra* Section B.

[3] This Court found that Plaintiffs' service was proper after two rounds of briefing on the issue.

A. **PLAINTIFFS PROPERLY EFFECTED SERVICE THROUGH DIPLOMATIC CHANNELS UNDER ARTICLE 9 OF THE HAGUE SERVICE CONVENTION, AS PERMITTED BY THE PLAIN TEXT OF FSIA § 1608(a)(2)**

Kuwait's argument that service was improper in this case flies in the face of the plain text of the FSIA's applicable service provisions as well as the plain text of the Hague Service Convention. It is a central principle of both statutory and treaty construction that the plain language of the statute or treaty should control. For this reason, the United States Supreme Court has instructed courts not to look beyond the plain meaning of a statute's language "to cloud a statutory text that is clear." *Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994); *see also Caminetti v. United States*, 242 U.S. 470 (1917). Similarly, the Court has held that the plain language of a treaty should control absent "extraordinarily strong contrary evidence." *Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. 176, 185, 102 S.Ct. 2374, 2380 (1982); *see also* Vienna Convention on the Law of Treaties ("VCLT") art. 31(1), May 23, 1969, 1155 U.N.T.S. 331, 8 I.L.M. 679 (1969). Despite this well-settled principle of construction, Kuwait asks this Court to depart from the plain language of both the Hague Service Convention and the FSIA and adopt a strained interpretation of both. The Court should decline Kuwait's invitation.

1. **Kuwait's Interpretation of FSIA § 1608(a)(2) Cannot Withstand Scrutiny**

The language of the FSIA is clear. Section 1608 of the FSIA recognizes four methods of service on a foreign state, which must be utilized in a hierarchical order. The first method, which was not available to Plaintiffs, requires service "in accordance with any special arrangement for service between the plaintiff" and the foreign state. 28 U.S.C. § 1608(a)(1).[4] Plaintiffs therefore proceeded under the second method, which permits "delivery of a copy of the summons and

---

[4] There is no dispute that service by such arrangement was not available in this case. *See* Plaintiffs' Corrected Memorandum Of Points And Authorities In Opposition To Defendant Kuwait's Motion To Dismiss at 5 & n.5 (Dkt. No. 71, Jan. 13, 2009); Affirmation of Steven Watt, Esq. (Dkt. No. 69-1, Ex. B, Jan. 9, 2009) (affirming that Defendant Kuwait declined service by special arrangement); *see also* Kuwait's Supp. Br. at 2.

complaint in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608 (a)(2).[5] Specifically, Plaintiffs effected service through diplomatic channels under Article 9 of the Hague Service Convention, which makes explicit provision for service through diplomatic channels where "exceptional circumstances so require." Kuwait does not dispute that the Hague Service Convention is "an applicable international convention on the service of judicial documents." *See* Kuwait's Supp. Br. at 2. Nor does Kuwait dispute that Article 9 of the Hague Service Convention permits service on a foreign sovereign pursuant to diplomatic channels. *Id.* at 5. Nevertheless, Kuwait argues that FSIA § 1608(a)(2) required Plaintiffs to first attempt service on Kuwait's Central Authority prior to proceeding with service through diplomatic channels under Article 9 of the Hague Service Convention. *See* Kuwait's Supp. Br. at 7-8. Kuwait's argument is wrong for several reasons.

First, Kuwait's interpretation of FSIA § 1608(a)(2) ignores the statute's plain language. Indeed, Kuwait's interpretation would require the Court to impermissibly read additional language into the statute's plain text by requiring that service under an applicable international convention be accomplished through a convention's alleged "primary method" of service – i.e. requiring service through a foreign state's designated Central Authority under the Hague Service Convention. *See id.* at 4. But this Court is not permitted to reconfigure or supplement language into a statute "to cloud a statutory text that is clear." *Ratzlaf v. United States*, 510 U.S. at 147-

---

[5] As Kuwait notes, on March 25, 2007, Plaintiffs initially attempted to serve Kuwait under Article 2 of the Hague Service Convention by delivering a copy of their complaint and summons to the Kuwaiti Ministry of Justice, Kuwait's designated Central Authority for service of process under the Convention. Kuwait's Supp. Br. at 2. It subsequently transpired that the summons that was delivered was not executed by the Court. Despite knowledge of this defect, for over three years now, Kuwait has failed to issue a certificate either objecting to or confirming this attempted service, in breach of Kuwait's explicit obligations under Articles 4 and 6 of the Hague Service Convention. Based on Kuwait's failure to issue such a certificate, this Court may determine that service was in fact effective and proceed to the merits of the case. *Cf. Marschauser v. Travelers Indem. Co.*, 145 F.R.D. 605, 609-610 (S.D. Fla. 1992); *see also, e.g., Daly v. Llanes*, 1999 WL 1067876, *2 (S.D.N.Y. Nov. 24, 1999) (finding personal jurisdiction when the receiving state failed to provide a certificate of service after nine months and noting that the Hague Service Convention "specifically contemplates that judgment may issue in the event that a signatory state's procedures have failed to provide a certificate of service in a timely manner").

48. To do so would contravene settled Supreme Court authority regarding statutory interpretation and Congressional intent in drafting an unqualified and plainly worded service provision requiring only that a plaintiff follow the provisions of an applicable international treaty when serving a foreign state. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 452-53 (1987) (Scalia, J., concurring) ("Judges interpret laws rather than reconstruct legislators' intentions. Where the language of those laws is clear, we are not free to replace it with an unenacted legislative intent.").

Second, Kuwait's argument depends upon this Court finding some inconsistency between the FSIA and the Hague Service Convention where there is none. Specifically, Kuwait argues that the Court cannot find that the Hague Service Convention permits service on a foreign state through diplomatic channels because that would directly conflict with the FSIA's requirement in § 1608(a)(4) that service be attempted on the state's Central Authority before attempting service through diplomatic channels. *See* Kuwait's Supp. Br. at 8-9. Kuwait further contends that this "conflict" requires the Court to apply the "last-in-time" rule to find that the FSIA "trump[s]" the Hague Service Convention. *Id.* at 8. This argument must be rejected. As set forth below (*see infra* Section B), the FSIA allows service through diplomatic channels not only under its fourth method of service but also under its second method. Unlike the fourth method, the FSIA's second method of service does *not* specifically require service on the foreign state's Central Authority, but *only* requires service in accordance with "an applicable international convention." 28 U.S.C. § 1608(a)(2). Thus there is no "conflict" in this case, other than the one that Kuwait's strained reading of the FSIA attempts to create. The FSIA's second method – permitting service pursuant to an applicable international convention without resort to a Central Authority – can

easily be read in harmony with the Hague Service Convention, which permits service on a foreign state either through a Central Authority or through diplomatic channels.

As the Supreme Court has counseled, this is precisely the sort of harmonious interpretation that courts should strive to adopt whenever possible. *See Whitney v. Robertson*, 124 U.S. 190, 194 (1888) (where a treaty and a statute "relate to the same subject, the courts will always endeavor to construe them so as to give effect to both, if that can be done without violating the language of either"); *accord Blanco v. United States*, 775 F.2d 53, 61 (2d Cir. 1985) (citing *United States v. United Continental Tuna Corp.*, 425 U.S. 164, 168 (1976)). For this reason, "a treaty will not be deemed to have been abrogated or modified by a later statute unless such a purpose on the part of Congress has been clearly expressed." *Cook v. United States*, 288 U.S. 102, 120 (1933). Kuwait has not pointed to any clear expression of Congressional intent requiring an abrogation of the Hague Service Convention's provisions on service, and the last-in-time rule therefore has no place here. *See Blanco*, 775 F.2d at 61 ("Frequent invocations of the [rule] that a later treaty supersedes an earlier federal statute and *vice versa* neglect the Supreme Court's instruction in *Whitney* that courts should endeavor to construe the two so as to give effect to both – an instruction that incorporates the 'cardinal principle of statutory construction that repeals by implication are not favored'") (citing *United Continental Tuna Corp.*, 425 U.S. at 168).

In the end, the facts of this case indisputably demonstrate that Plaintiffs properly served Kuwait under § 1608(a)(2) pursuant to "an applicable international treaty" by service through diplomatic channels under article 9 of the Hague Service Convention. Because this method of

service was permitted by the plain language of the FSIA, dismissal of Plaintiffs' suit against Kuwait on the basis of improper service would be wholly inappropriate.[6]

### 2. Kuwait's Interpretation of the Hague Service Convention Must Also Be Rejected

Finding no true ambiguity in the text of the FSIA, Kuwait resorts to arguing that the Hague Service Convention should be read to permit service through diplomatic channels only if service on the foreign state's Central Authority is unavailable or foreclosed. Kuwait's Supp. Br. at 6-8. According to Kuwait, service through diplomatic channels is only permitted under "exceptional circumstances" that do not exist in this case. *Id.* at 6-7. But Kuwait's interpretation of the Hague Service Convention, like its interpretation of the FSIA, contradicts the plain language of the Convention and State Department directives regarding interpretation of the Convention's service provisions.

#### a. Service on a foreign state is an "exceptional circumstance" under Article 9.

Although Article 9 does not define "exceptional circumstances," it is well recognized among signatories to the Convention that service on a foreign state constitutes such circumstances.[7] The Permanent Bureau of the Hague Conference on Private International Law,

---

[6] Although Kuwait makes much of the fact that Plaintiffs designated their August 2008 service on Kuwait as service under the FSIA's fourth method of service (*see* Kuwait's Supp. Br. at 3), that designation was entirely a function of Kuwait's failure to follow protocol under the Hague Service Convention and does not, in any event, preclude a finding that service in this case was appropriate pursuant to the FSIA's second method of service. Because Kuwait never responded to Plaintiffs' March 2007 service, Plaintiffs legitimately believed (and based on Kuwait's continued non-response, continue to believe) that they were entitled to serve Kuwait under the FSIA's fourth method of service. Nevertheless, Plaintiffs ensured that their second attempt at service through diplomatic channels would also comply with the FSIA's second method of service (as it did in *Swarna*), in the event that Plaintiffs' first attempt at service was somehow faulty. Thus, notwithstanding Kuwait's characterization of Plaintiffs' "intent" when serving through diplomatic channels (*see* Kuwait's Supp. Br. at 3), Plaintiffs' intent has always been to accomplish service using a method that was permitted under the FSIA and that would elicit an acknowledgement from Kuwait.

[7] *See* the Hague Conference on International Law, Questionnaires & Responses for Questionnaire of July 2008, available at http://www.hcch.net/index_en.php?act=conventions.publications&dtid=33&cid=17 (listing state responses to the July 2008 survey by the Hague Conference, in which several states—including Bulgaria, Japan, and Sweden—described service on a foreign state as a past instance of "exceptional circumstances" for purposes of Article 9, in response to Question 39).

8

the inter-governmental body tasked with establishing regulations to the Convention and monitoring duties,[8] explains that "[o]ne example of such exceptional circumstances [under Article 9] is service of a claim on a foreign sovereign state." Practical Handbook on the Operation of the Hague Service Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ¶ 193 (3d ed. 2006) (the "Practical Handbook").

Kuwait disputes that service on a foreign state constitutes "exceptional circumstances," citing a footnote in the *Practical Handbook* that states that, in the United States, a diplomatic note is sent after service has been refused by the Central Authority.[9]  However, the footnote Kuwait cites simply describes another example of the type of exceptional circumstances that would necessitate diplomatic service; the footnote does not undermine the text of the *Practical Handbook*, which clearly defines exceptional circumstances as including service on a foreign sovereign state.

Kuwait also disputes that the *Practical Handbook* is the appropriate authority by which to define the meaning of "exceptional circumstances." Kuwait's Supp. Br. at 6-7.  However, Kuwait's position is premised on an incorrect understanding of the *Volkswagenwerk* case. Kuwait interprets *Volkswagenwerk* to mean that courts should refer to the internal law of the

---

[8] *See* Hague Conference on Private International Law, available at http://www.hcch.net.

[9] Kuwait also posits that the *Practical Handbook* definition of "exceptional circumstances" as always including service on a foreign sovereign state renders the phrase "exceptional circumstances" meaningless.  However, the Hague Service Convention permits service on a variety of individuals and entities, not only foreign states.  Thus, the Practical Handbook gives meaning to the phrase "exceptional circumstances" by recognizing that service on a foreign state typically entails special difficulties that merit the use the diplomatic channels.  *See* Hague Conference on International Law, Questionnaires & Responses for Questionnaire of July 2008, available at http://www.hcch.net/index_en.php?act=conventions.publications&dtid=33&cid=17 (clarifying, in Question 39 of the Questionnaire, that other instances that *might* merit the use of diplomatic channels include service on a "head of State, a government entity, member of government, consular or diplomatic agent or any other official acting for a State or a State-owned company").

9

member state to determine applicable standards of service not prescribed by the Hague Service Convention. *Id.* at 6-7. Based on this interpretation, Kuwait argues that this Court should import into the Convention a definition of "exceptional circumstances" that can "effectively" be drawn from the FSIA, the U.S. law governing service on a foreign state. Although the FSIA does not even use the term "exceptional circumstances" or otherwise refer to the Hague Service Convention explicitly, Kuwait argues that FSIA § 1608(a)(4) limits the use of service through diplomatic channels under the Hague Service Convention only to those situations where all other methods of service are unavailable or foreclosed. There is no basis for this interpretation, or for Kuwait's suggestion that the FSIA – a U.S. statute – should be used as the interpretive guidepost for language contained in a multilateral treaty.

Properly interpreted, *Volkswagenwerk* stands for the simple proposition that courts should look to the Hague Service Convention when a member state's internal law requires documents to be sent overseas for service.[10] Thus, *Volkswagenwerk* instructs courts on when to resort to the Convention and says nothing about the standards that should be employed for service of documents overseas. Accordingly, this Court can and should look to documents and legal authority specifically designed to interpret the meaning of the Hague Service Convention – like the *Practical Handbook* – to define "exceptional circumstances." That authority plainly

---

[10] The issue in *Volkswagenwerk* was whether the plaintiff's service on a domestic subsidiary of an international company was sufficient or whether the plaintiff instead needed to effect service in accordance with the Hague Service Convention by transmitting documents for service abroad. 486 U.S. at 699. The Court reasoned that a complaint must be served in accordance with the Hague Service Convention if the applicable method of service in the internal law of the forum state requires transmittal of documents abroad. *Id.* at 700. The Court found service on a domestic agent to be sufficient under both the standards of the state long-arm statute and the Due Process Clause of the U.S. Constitution, concluding that when the internal law of the forum authorizes such domestic service "our inquiry ends and the Convention has no further implications." *Id.* at 708. In other words, the Court looked to the internal law of the forum state only to determine whether the Hague Service Convention applied—not to define any standard to be incorporated by the Convention.

provides that service on a foreign state may be accomplished by service through diplomatic channels because such service constitutes an "exceptional circumstance."

     **b.**  **The Hague Service Convention permits Plaintiffs to effect service through diplomatic channels under Article 9 without first attempting service through a Central Authority under Articles 2-6.**

Contrary to Kuwait's argument, the Hague Service Convention permits service on a foreign state through diplomatic channels in the first instance. As explained (*supra* Section A.1.), the Convention is "an appropriate international convention" for purposes of § 1608(a)(2) of the FSIA. The FSIA does not specify that a party attempting service under the Hague Service Convention must do so under any particular article of that treaty. 28 U.S.C. § 1608(a)(2). Although Kuwait characterizes the designation of Central Authorities as the "primary innovation" of the Hague Service Convention and the "primary method" of service on a foreign state, none of the authorities relied upon by Kuwait hold that service through a Central Authority is the *only* way to effect service under the Convention, or that service through a Central Authority must be attempted first. *See Volkswagenwerk Aktiengellschaft v. Schlunk*, 486 U.S. 494, 698 (1998); *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 470 (D.N.J. 1998). Instead, these authorities recognize that the Hague Service Convention explicitly authorizes "several different ways to effectuate service," including through diplomatic channels under Article 9. *Eli Lilly & Co.*, 23 F. Supp. 2d at 470.

Moreover, although the U.S. Department of State, as a matter of policy and practice, may consider service through a foreign state's designated Central Authority the preferred method of service on a foreign state under the Hague Service Convention, *as a matter of law*, service through the designated Central Authority under Articles 2-6 of the Hague Service Convention is clearly not the only available means of service. *See Nuovo Pignone, SpA v. Storman Asia M/V*,

11

310 F. 3d 374, 383 (5th Cir. 2002) ("Article 9 permits diplomatic agents to forward documents to designated authorities in receiving nations who, in turn, effect service on the proper parties"); *Koehler v. Dodwell*, 152 F. 3d 304, 307 (4th Cir. 1998) ("Article 9 allows a state to use consular or—in exceptional circumstances—diplomatic channels to forward the judicial documents to the designated authorties"); *see also*, U.S. Department of State Foreign Affairs Manual Volume 7, § 953.7(d) ("[t]he Hague Service Convention provides for service of process by a designated Central Authority pursuant to a formal request, *and includes alternative methods of service*") (emphasis added). Plaintiffs' use of diplomatic channels under Article 9 of the Hague Service Convention was therefore entirely appropriate, even if service on Kuwait's Central Authority was possible.

> **B.    OTHER AUTHORITIES SUPPORT THE PROPRIETY OF SERVICE UNDER THE FSIA'S SECOND METHOD BY DIPLOMATIC CHANNELS UNDER ARTICLE 9**

The authorities previously cited by Plaintiffs provide ample support their position that service through a foreign state's designated Central Authority is not the only available means of service recognized under the FSIA's second method of service, and that service through diplomatic channels under Article 9 is also sufficient. *See* authorities cited *supra* Section A.2.b.

The propriety of Plaintiffs' service in this case is also demonstrated by the Southern District of New York's decision in *Swarna v. Al-Awadi*, where the court approved service *on Kuwait* by the *exact same means* as effected in this case. 607 F. Supp. 2d 509, 514 (S.D.N.Y. 2009). As the record in *Swarna* explicitly sets forth, on February 11, 2008, the plaintiff reported to the court that she had served Kuwait "through diplomatic channels pursuant to Article 9 of the Hague Service Convention[,] fulfill[ing] the requirements set forth in Section 1608(a)(2) of FSIA for service of process on a foreign sovereign[.]" Endorsed Memo at 3, Dkt. No. 22, *Swarna v.*

*Al-Awadi et al.*, Case No. 06-CV-4880 (PKC) (Feb. 13, 2008) (Ex. A).  The plaintiff in *Swarna* – like Plaintiffs in *Sabbithi* – indicated that she had effected service via diplomatic channels on Kuwait by means of a "Diplomatic Note."  *See id*. at 2.  Judge P. Kevin Castel endorsed *this very filing*, ordering that "Plaintiff may proceed."  *Id*. at 4.  The court later *again* confirmed that the plaintiff "effected service on Kuwait" by diplomatic channels in accord with the Hague Service Convention Art. 9 and 28 U.S.C. § 1608(a)(2) in its published order of March 20, 2009, where the court explicitly cited those authorities with approval.  *Swarna*, 607 F. Supp. 2d at 514.  The records of Swarna's Counsel also document the State Department's view that service was effected through diplomatic channels under 28 U.S.C. § 1608(a)(2) as described in the filing endorsed by Judge Castel.  *See* E-Mail from Kim B. Richter (U.S. State Department) to Andrew Fields, dated Oct. 9, 2007 (Ex. B).

      Despite the clarity of the record in *Swarna*, Kuwait argues that Plaintiffs cannot rely on *Swarna* as authority because the plaintiff in *Swarna* theoretically may not have effected service through diplomatic channels.  However, Kuwait's argument is based on an incomplete understanding of Plaintiffs' options for use of service through diplomatic channels under the FSIA.  Kuwait assumes that the FSIA only allows for service through diplomatic channels under § 1608(a)(4), the statute's fourth method of service, which is available only when service could not be made by mail in accordance with § 1608(a)(3) within 30 days. *See* Kuwait's Supp. Br. at 11.  Kuwait argues that the plaintiff in *Swarna* may not have been entitled to use § 1608(a)(4) because of the 30-day timing requirement. *Id*. However, Kuwait's argument ignores the fact that service through diplomatic channels is also available under § 1608(a)(2), which imposes no timing requirements.  As in the present case, the plaintiff in *Swarna* effected service through

diplomatic channels under the FSIA's second method. Kuwait's arguments about the timing requirements prescribed by the FSIA's fourth method are therefore irrelevant.

In short, Kuwait's attempts to distinguish *Swarna* by asserting that it "may" have involved some other means of service "effected in accordance with Articles 2-6" lack *any* factual support, are directly contradicted by the record in *Swarna,* and, given Kuwait's familiarity with that decision, verge on dishonesty. Based on the record, there is no credible basis for denying that *Swarna* approved service under Hague Service Convention Art. 9 and 28 U.S.C. § 1608(a)(2).

C.  **IN THE ALTERNATIVE, THIS COURT SHOULD ALLOW PLAINTIFFS ANOTHER OPPORTUNITY TO SERVE KUWAIT**

Should this Court consider service improper, the appropriate course of action is not to dismiss Plaintiffs' claims, but to permit Plaintiffs to attempt service again pursuant to the FSIA.

The D.C. Circuit has held that "dismissal is not appropriate when there exists a reasonable prospect that service can be obtained." *Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C. Cir. 1983). Here, there is indisputably a "reasonable prospect that service can be obtained" on Kuwait because there is no time limit applicable to effect service on a foreign state. Fed. R. Civ. P. 4(m); *see Lucas v. Natoli*, 936 F.2d 432, 433 (9th Cir. 1991) ("We find the controlling language of [Rule 4(m)] so clear that it allows no latitude for interpretation."), *cert. denied* 502 U.S. 1073 (1991); *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 805 F. Supp. 3, 5 (E.D.N.Y. 1992) (noting that the lack of time limit for service upon a foreign state is to compensate for "the fact that foreign service of process can be very complex and time consuming"). And, as Kuwait itself insists, service can still be obtained through service on the Kuwait Ministry of Justice, its designated Central Authority. *See* Kuwait's Supp. Br. at 4-5. Further, as the *Swarna* case illustrates, service can also be obtained through service on Kuwait's

14

Ministry of Foreign Affairs. *See supra* Section B. Thus, if – despite Plaintiffs' unacknowledged service on Kuwait's Ministry of Justice and subsequent service on Kuwait's Ministry of Foreign Affairs – this Court finds that service was somehow inadequate, Plaintiffs should be afforded another opportunity to serve Kuwait. Allowing Plaintiffs such an opportunity would not be prejudicial to Kuwait. Indeed, any time delay in effectuating service in this case is largely attributable to Kuwait, which has continuously sought to evade a trial on the merits of this action by its failure, for example, to respond to Plaintiffs' initial attempt at service in violation of Kuwait's express obligations under Articles 4 and 6 of the Hague Service Convention.

## CONCLUSION

For the foregoing reasons, the Court should affirm its Minute Order finding Plaintiffs have properly served Kuwait under 28 U.S.C. § 1608(a)(2) by means of Article 9 of the Hague Service Convention. In the alternative, the Court should grant Plaintiffs another opportunity to serve Kuwait.

April 30, 2010                    Respectfully submitted,

/s/ Craig G. Falls
David A. Kotler*
Amy L. Rudd*
Craig G. Falls (D.C. Bar No. 502368)
DECHERT LLP
1775 I Street, N.W.
Washington, D.C. 20006
(202) 261-3300

Steven Macpherson Watt
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
– HUMAN RIGHTS PROGRAM
125 Broad Street, 18th Floor
New York, NY 10004
(212) 519-7870

Lenora M. Lapidus
Risha K. Foulkes
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
– WOMEN'S RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY  10004
(212) 549-2644

*Counsel for Plaintiffs Mani Kumari Sabbithi, Joaquina Quadros, and Gila Sixtina Fernandes*

* admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

      I, Craig G. Falls, hereby certify that on April 30, 2010, I caused to be served via e-mail per the parties' written agreement, a true and correct copy of the foregoing Plaintiffs' Supplemental Brief in Response to Kuwait's Arguments Regarding Service:

      Thomas B. Wilner, Esq.
      Neil H. Koslowe, Esq.
      Justin Harrison, Esq.
      Shearman & Sterling LLP
      801 Pennsylvania Avenue, N.W.
      Suite 900
      Washington, D.C. 20004-2634

      /s/ *Craig G. Falls*
      Craig G. Falls, Esq.
      D.C. Bar No. 502368
      1775 I Street, N.W.
      Washington, D.C.  20006
      Telephone:  (202) 261-3373
      Fax:   (202) 261-3034