**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **MANI KUMARI SABBITHI, et al.,** | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 07-115 (EGS) |
| **MAJOR WALEED KH N.S. AL SALEH,** **et al.,** | ) ) ) ) | |
| Defendants. | ) ) | |

**SECOND STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA**

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATUTORY BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.       SERVICE VIA DIPLOMATIC CHANNELS UNDER § 1608(a)(4) CANNOT
          BE CONSIDERED SERVICE IN ACCORDANCE WITH AN APPLICABLE
          INTERNATIONAL CONVENTION UNDER § 1608(a)(2) . . . . . . . . . . . . . . . . . . . . . . 5

II.      PERMITTING SERVICE VIA DIPLOMATIC CHANNELS UNDER § 1608(a)(4)
          TO SATISFY § 1608(a)(2) WOULD CONFLICT WITH DEPARTMENT OF
          STATE POLICY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          A.      The Department of State's Policy of Not Using Diplomatic Channels under
                  Article 9 to Attempt to Satisfy § 1608(a)(2) Best Implements Congressional
                  Intent, as Reflected in the Structure of the FSIA . . . . . . . . . . . . . . . . . . . . . . . . . 9

          B.      The United States Does Not Treat Service on a Foreign Sovereign State,
                  Standing Alone, as an "Exceptional Circumstance" Warranting the Use of
                  Diplomatic Channels under Article 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**INTRODUCTION**

The United States of America, by and through undersigned counsel, respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517 and in response to the Court's invitation to the United States Department of State to communicate its views on this case.[1]

This action was brought against the State of Kuwait, a Kuwaiti diplomat, Major Waleed KH N.S. Al Saleh, and his wife, Maysaa KH A.O.A. Al Omar, by the couple's former domestic servants. Plaintiffs allege that they were brought into the United States and forced to work under conditions that violate the Thirteenth Amendment, the Trafficking Victims Protection Act, the Fair Labor Standards Act, and common law tort and contract law. The Court previously quashed service of process as to Major Al Saleh and Ms. Al Omar and dismissed them from the case. Sabbithi v. Al Saleh, 605 F. Supp. 2d 122 (D.D.C. 2009).[2] Kuwait has now moved to dismiss, asserting, among other things, that it has not been properly served under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1608(a), and that the Court therefore lacks personal jurisdiction over it. Plaintiffs respond that their attempt to effect service via diplomatic channels, although intended to satisfy 28 U.S.C. § 1608(a)(4), in fact satisfied 28 U.S.C. § 1608(a)(2) because it constituted service in accordance with an applicable international convention — namely, Article 9 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial

---

[1] 28 U.S.C. § 517 provides that "any officer of the Department of Justice[] may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States." The United States previously submitted a Statement of Interest in this case in July 2008. See Doc. No. 48.

[2] The Court later vacated its holding that the couple, who had since returned to Kuwait, retained "residual immunity" under Article 39(2) of the Vienna Convention on Diplomatic Relations. See Minute Order (Feb. 18, 2010). Plaintiffs have moved to reinstate Major Al Saleh and Ms. Al Omar as Defendants, and for permission to re-serve them; that motion remains pending. See Doc. No. 127.

Documents in Civil or Commercial Matters ("Hague Convention"), done Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

The United States submits the following views because it has an important interest in the proper interpretation and application of both the Foreign Sovereign Immunities Act and the Hague Convention in United States courts.  By ensuring that foreign states do not have to litigate suits brought against them in U.S. courts unless they have been properly served, the United States not only complies with its obligation to apply its domestic law consistently with principles of international law, but also protects its own interest in avoiding litigation in foreign jurisdictions absent proper service.  In addition, the United States has an important interest in ensuring that diplomatic channels — which require the Department of State to communicate directly with the Ministries of Foreign Affairs of other states — are used only when appropriate, so as not to unnecessarily burden the Department with requests for service on foreign states that could be handled more expeditiously without diplomatic involvement.

As explained below, in the view of the United States, service through diplomatic channels under § 1608(a)(4) cannot be considered service in accordance with an applicable international convention under § 1608(a)(2).  Further, deeming such service effective here would conflict with Department of State policy.

**STATUTORY BACKGROUND**

The "FSIA provides the sole basis for obtaining jurisdiction over a foreign state in federal court." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 439 (1989).  Under the FSIA, a foreign state is "presumptively immune" from the jurisdiction of United States courts. Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993); see 28 U.S.C. § 1604.  That presumption is overcome only if an exception to immunity applies, in which case the FSIA

confers subject matter jurisdiction. TMR Energy Ltd. v. State Prop. Fund of Ukraine, 411 F.3d 296, 299 (D.C. Cir. 2005) (citing 28 U.S.C. §§ 1330(a), 1604-07). Personal jurisdiction "follows where proper 'service has been made under [28 U.S.C.] § 1608.'" Id. (quoting 28 U.S.C. § 1330(b)); see also Practical Concepts Inc. v. Republic of Bolivia, 811 F.2d 1543, 1548 n.11 (D.C. Cir. 1987) ("under the FSIA, 'subject matter jurisdiction plus service of process equals personal jurisdiction'") (citation omitted).

Section 1608(a), in turn, provides that service on a foreign state "shall be made" by one of four enumerated methods:

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
>
> (4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services — and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a). These methods are ordered hierarchically and "each [is] available only if the previously enumerated options are in some way foreclosed." Democratic Republic of Congo v. FG Hemisphere Assocs., 508 F.3d 1062, 1063 (D.C. Cir. 2007). "[S]trict adherence to the

3

terms of [§] 1608(a) is required," Transaero Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148, 154 (D.C. Cir. 1994), and "[n]either substantial compliance with § 1608(a)'s requirements nor actual notice of the suit excuses . . . deviation from the section's mandates," Doe v. State of Israel, 400 F. Supp. 2d 86, 102 (D.D.C. 2005).

## PROCEDURAL BACKGROUND

There appears to be no dispute that because the first and third methods were unavailable here, only the second and fourth methods are now relevant. The record indicates that, in March 2007, Plaintiffs attempted to satisfy the second method — service in accordance with an applicable international convention, 28 U.S.C. § 1608(a)(2) — by delivering a copy of the summons and complaint to Kuwait's Ministry of Justice, the designated Central Authority under Articles 2 through 6 of the Hague Convention. However, the summons had not been executed by the Clerk of Court. In December 2007, Plaintiffs attempted to satisfy the fourth method — service through diplomatic channels, id. § 1608(a)(4) — by transmitting the service papers, including a properly executed summons, to the Department of State, which forwarded them to Kuwait's Ministry of Foreign Affairs via diplomatic channels in August 2008.

The Court initially granted Kuwait's motion to dismiss, concluding that Plaintiffs' attempt to satisfy § 1608(a)(2) failed because they had not included a properly executed summons and, therefore, they were not yet entitled to attempt service pursuant to § 1608(a)(4). Sabbithi v. Al Saleh, 623 F. Supp. 2d 93, 98 (D.D.C. 2009). On Plaintiffs' motion for reconsideration, the Court vacated that decision and held that service through diplomatic channels — although intended to satisfy § 1608(a)(4) — in fact satisfied § 1608(a)(2) because it constituted service in accordance with Article 9 of the Hague Convention. See Minute Order (Feb. 18, 2010). Supplemental briefing on the service issue followed.

The Court has requested the Department of State's views on two issues: (1) "whether service on a foreign state . . . through diplomatic channels, which was intended to comply with . . . 28 U.S.C. § 1608(a)(4), may qualify as service on a foreign state in accordance with Article 9 of the Hague Convention . . . , within the meaning of . . . 28 U.S.C. § 1608(a)(2)"; and (2) whether "allowing a party to serve a foreign state through diplomatic channels pursuant to Article 9 of the Hague Convention would conflict with long-standing Department of State policy regarding when a party may avail itself of service of process through diplomatic channels." Letter from Hon. Emmet G. Sullivan to Hon. Harold H. Koh, at 1-2 (Mar. 18, 2010).

## DISCUSSION

### I. SERVICE VIA DIPLOMATIC CHANNELS UNDER § 1608(a)(4) CANNOT BE CONSIDERED SERVICE IN ACCORDANCE WITH AN APPLICABLE INTERNATIONAL CONVENTION UNDER § 1608(a)(2)

Plaintiffs' argument that service via diplomatic channels that was intended to satisfy § 1608(a)(4) also satisfies § 1608(a)(2) proceeds from a faulty premise: that transmittal of a diplomatic note under § 1608(a)(4) automatically constitutes effective service under Article 9 of the Hague Convention. That contention misunderstands the nature of service under the Hague Convention, and fails to recognize that the elements needed for effective service under § 1608(a)(4) differ in significant respects from those needed under Article 9.

When service papers are transmitted through diplomatic channels under § 1608(a)(4), service is deemed effective "as of the date of transmittal indicated in the certified copy of the diplomatic note." 28 U.S.C. § 1608(c)(1). In other words, service is complete upon transmittal of the diplomatic note to the Ministry of Foreign Affairs of the destination state, without regard to whether the foreign state certifies receipt of service or, indeed, even accepts delivery of the diplomatic note.

5

By contrast, under Articles 2 through 6 of the Hague Convention, service is not complete upon the mere delivery of a proper request for service to the Central Authority. Rather, under Article 5, the Central Authority must attempt to serve the documents (or have them served) on the addressee in accordance with its internal laws (or by another method designated by the applicant, if compatible with those laws). See Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 698-99 (1988) (citing Hague Convention art. 5). And under Article 6, the Central Authority must forward the applicant a certificate stating where, when, and upon whom the document ultimately was served. See id. (citing Hague Convention art. 6). Consistent with the Convention, under the FSIA, service is deemed effective as of the date indicated in that certificate. See 28 U.S.C. § 1608(c)(2) ("Service shall be deemed to have been made . . . as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed.").

Similarly, under Article 9 of the Convention, service is not automatically complete upon delivery of the diplomatic note to the Ministry of Foreign Affairs of the destination state. Rather, the first paragraph of Article 9 authorizes the use of consular channels to forward documents to the designated authority of another Contracting State, which is then responsible for effecting service. See Hague Convention art. 9(1) (consular channels may be used "to forward documents, for the purpose of service, to those authorities of another Contracting State which are designated by the latter for this purpose"). The second paragraph of Article 9 then authorizes the use of diplomatic channels "for the same purpose" — that is, for forwarding documents to the designated authority to effect service. See id. art. 9(2). Thus, when diplomatic channels are used, the documents are first forwarded to the destination state's Ministry of Foreign Affairs, which forwards them to the designated authority. It is the designated authority that is ultimately

6

responsible for effecting service on the addressee in accordance with local law.  See, e.g., Nuovo Pignone SA v. Storman Asia M/V, 310 F.3d 374, 383 (5th Cir. 2002) ("Article 9 permits diplomatic agents to forward documents to designated authorities in receiving nations who, in turn, effect service on the proper parties.").  Kuwait has designated its Ministry of Justice as the competent authority responsible for serving documents under Article 9.[3]

The Practical Handbook on the Operation of the Hague Service Convention — which provides nonbinding guidance on the operation of the Convention, based on the practices of Contracting States — confirms that service under Article 9 operates in this manner.  See Permanent Bureau of the Hague Conference on Private International Law, Practical Handbook on the Operation of the Hague Service Convention ¶¶ 185-86 (3d ed. 2006) [hereinafter Practical Handbook].  Under traditional diplomatic channels, the Ministry of Foreign Affairs of the state of origin — here, the Department of State — "sends the documents to its State's diplomatic or consular representation in the State of destination, which then sends [them] to the Ministry of Foreign Affairs of the State of destination."  Id. ¶ 185 (footnote omitted).  If the Ministry of Foreign Affairs of the state of destination "grants judicial assistance, it then forwards the documents to the Ministry of Justice of the State of destination, which then delivers them to the competent authority or judicial officer," which "eventually serves the document[s] on the addressee."  Id.  Only then is service complete under Article 9.

Thus, although there is a superficial similarity between 28 U.S.C. § 1608(a)(4) and Article 9 of the Hague Convention — in that both contemplate the use of diplomatic channels to

---

[3] A country-by-country listing of designated authorities under the Hague Convention is available at http://www.hcch.net/index_en.php?act=conventions.authorities&cid=17 (last visited Sept. 15, 2010).  Kuwait has designated its Ministry of Justice as both its Central Authority under Articles 2 through 6 and its competent authority under Article 9.  Id.

effect service — the elements that must be satisfied to complete service under these provisions differ significantly. Under § 1608(a)(4), service is effective immediately upon transmittal of the diplomatic note, without further action by the Ministry of Foreign Affairs of the destination state. Under Article 9, however, further action by the Ministry of Foreign Affairs and the designated authority is required; mere transmittal of the diplomatic note by the sending state is insufficient.

Here, although the record indicates that a diplomatic note was transmitted to Kuwait's Ministry of Foreign Affairs, there is no indication that further steps were taken to effect service. Therefore, there is no basis on the current record to conclude that service has been effected under Article 9 of the Hague Convention.[4]

---

[4] Plaintiffs assert that Swarna v. Al Awadi, 607 F. Supp. 2d 509 (S.D.N.Y. 2009), stands as precedent for the proposition that a plaintiff may satisfy § 1608(a)(2) by serving a foreign state via diplomatic channels under Article 9. See Pls.' Sur-Reply in Further Opp'n to Def. Kuwait's Mot. to Dism. 2 n.1 [Doc. No. 81]; Pls.' Supp. Br. in Resp. to Kuwait's Arguments Regarding Service 12-13 [Doc. No. 110]. However, the question does not appear to have been actually considered or decided in Swarna. Unlike here, Kuwait did not assert in Swarna that service was improper, so the issue was never fully briefed. See Mem. in Supp. of Defs.' Opp'n to Pl.'s Mot. for Default J. [Doc. No. 43] in Swarna v. Al Awadi, No. 06-4880 (S.D.N.Y.). And the court's only mention of the issue was in its recitation of procedural history, where it principally cited plaintiff's own assertion, via letter, that service was proper. Swarna, 607 F. Supp. 2d at 514 (citing, inter alia, Doc. No. 21). Thus, Swarna cannot properly be regarded as precedent on the issue. See, e.g., IDEA Pub. Charter Sch. v. Belton, No. 05-467, 2006 WL 667072, at *5 n.6 (D.D.C. Mar. 15, 2006) ("Judicial decisions do not stand as binding 'precedent' for points that were not raised, not argued, and hence not analyzed.") (quoting Legal Servs. Corp. v. Velazquez, 531 U.S. 533, 557 (2001) (Scalia, J., dissenting)). To the extent the Swarna court decided the issue, the United States views it as wrongly decided.

Plaintiffs also assert that an e-mail from a Department of State employee to counsel for the plaintiff in Swarna "document[s] the State Department's view that service [on Kuwait in Swarna] was effected through diplomatic channels under 28 U.S.C. § 1608(a)(2)." Pls.' Supp. Br. in Resp. to Kuwait's Arguments Regarding Service 13 & Ex. B [Doc. Nos. 110, 110-2]. That is plainly incorrect. Although the e-mail states that a diplomatic note was sent, it does not state that service was effected at all, let alone that service under Article 9 could satisfy § 1608(a)(2). See id. at Ex. B.

8

## II. PERMITTING SERVICE VIA DIPLOMATIC CHANNELS UNDER § 1608(a)(4) TO SATISFY § 1608(a)(2) WOULD CONFLICT WITH DEPARTMENT OF STATE POLICY

In view of the hierarchical structure of the FSIA, which reserves diplomatic channels as a method of last resort for service on a foreign state, and the general availability of service through established Central Authorities under the Hague Convention, the Department of State does not use diplomatic channels under Article 9 to forward documents for service under § 1608(a)(2). Rather, when a foreign state is a party to the Convention, plaintiffs generally must send requests for service on that state to its Central Authority, in accordance with the procedures laid out in Articles 2 through 6.

This is reflected in Department of State policy, which provides that a request for service through diplomatic channels under § 1608(a)(4) will not be processed without "a <u>statement in writing</u> from the plaintiff or the clerk certifying that . . . attempts [at service under §§ 1608(a)(1), (2), and (3)] were made or were otherwise not applicable." U.S. Dep't of State, <u>Checklist for Plaintiffs: Service of Process upon a Foreign State</u>, <u>available at</u> http://travel.state.gov/law/judicial/judicial_685.html (last visited Sept. 15, 2010). Accordingly, the Department would not process a request for service through diplomatic channels under Article 9 that was intended to satisfy § 1608(a)(2), and deeming such service effective here would conflict with that policy.

### A. The Department of State's Policy of Not Using Diplomatic Channels under Article 9 to Attempt to Satisfy § 1608(a)(2) Best Implements Congressional Intent, as Reflected in the Structure of the FSIA

The Department of State's policy of not using diplomatic channels under Article 9 to attempt to satisfy § 1608(a)(2) best implements congressional intent, as reflected in the structure of the FSIA, which contemplates the use of diplomatic channels to effect service on a foreign state only under § 1608(a)(4). First, § 1608(a)(4) specifically refers to the use of "diplomatic

9

channels," while § 1608(a)(2) contains only a general reference to "an applicable international convention."  It would strain logic to conclude that Congress intended the general reference in § 1608(a)(2) to encompass service via diplomatic channels, but nevertheless set forth specific requirements for such service under § 1608(a)(4).  Cf., e.g., Norwest Bank Minn. Nat'l Ass'n v. FDIC, 312 F.3d 447, 451 (D.C. Cir. 2002) ("When both specific and general provisions cover the same subject, the specific provision will control, especially if applying the general provision would render the specific provision superfluous, as it would here.").  Second, the hierarchical structure of § 1608(a) strongly suggests that Congress intended the use of diplomatic channels — the "most formal, most complex and most time-consuming form of transmission," Practical Handbook ¶ 185 — to be avoided unless necessary.  Notably, of all the methods of service outlined in § 1608(a), only the fourth and final one requires diplomatic assistance from the Department of State.  Third, the legislative history of the FSIA confirms that Congress intended service through diplomatic channels to be available only as "a method of last resort."  H.R. Rep. No. 94-1487, at 19 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6623.

Moreover, using diplomatic channels under Article 9 to attempt to satisfy § 1608(a)(2) could lead to diplomatic channels being used not once, but twice to complete service on a given defendant in a given case — a wasteful and undesirable result.  As noted, while service through diplomatic channels is immediately effective under § 1608(a)(4), the same would not be true under Article 9; indeed, a request for service under Article 9 could fail for several reasons.  For example, the designated authority could be unwilling to effect service on the government of the destination state.  Or the destination state's Ministry of Foreign Affairs could refuse to accept the diplomatic note.  Such scenarios are specifically contemplated by Article 13 of the Convention, which gives the destination state the right to refuse a request for service that it considers to

infringe its sovereignty or security. In such circumstances, if no other provisions of an international convention applied, service under § 1608(a)(2) would fail and an applicant could proceed to the other methods of service in § 1608(a). Here, that would mean a second attempt at service through diplomatic channels, this time under § 1608(a)(4). Given the significant burdens of using diplomatic channels, such an insensible result underscores the soundness of the Department's policy.

### B. The United States Does Not Treat Service on a Foreign Sovereign State, Standing Alone, as an "Exceptional Circumstance" Warranting the Use of Diplomatic Channels under Article 9

Article 9 of the Hague Convention provides that a "Contracting State shall be free, in addition," to use diplomatic channels to forward documents when "exceptional circumstances so require." Plaintiffs contend that service on a foreign sovereign state is a qualifying exceptional circumstance, pointing to a statement in the Practical Handbook and the practices of certain other states. See Pls.' Corrected Mem. in Opp'n to Def. Kuwait's Mot. to Dism. 9 (citing Practical Handbook ¶ 193) [Doc. No. 71].

In United States practice, however, the mere fact that the party to be served is a foreign sovereign state is not treated as an "exceptional circumstance" under Article 9. The Practical Handbook — which, again, does not bind Contracting States — recognizes that, given their complexity and time-consuming nature, diplomatic channels "are in principle applicable only in the absence of any conventional relationship between the two States concerned." Practical Handbook ¶ 186. Given the general availability of service through established Central Authorities under the Hague Convention, and in light of the hierarchical structure of the FSIA, the Department of State does not use diplomatic channels under Article 9 to forward documents for service under § 1608(a)(2). Rather, plaintiffs generally must send requests for service on a

11

foreign state to the Central Authority in accordance with the procedures laid out in Articles 2 through 6. Using diplomatic channels under Article 9 to satisfy § 1608(a)(2) would, as a practical matter, circumvent the Convention's "primary innovation" — the designation in each state of a Central Authority to process requests for service. <u>Volkswagenwerk</u>, 486 U.S. at 698. It would also unnecessarily burden the Department of State with requests for service on foreign states that could be handled more expeditiously without diplomatic involvement.

## CONCLUSION

For these reasons, in the view of the United States, service through diplomatic channels under § 1608(a)(4) cannot be considered service in accordance with an applicable international convention under § 1608(a)(2). Further, deeming such service effective here would conflict with Department of State policy.

It would not conflict with Department of State policy, however, to allow Plaintiffs another opportunity to forward a request for service with a properly executed summons to the Central Authority and, if service is refused, to permit them to resubmit their request for service through diplomatic channels pursuant to § 1608(a)(4).

Dated: September 15, 2010                           Respectfully submitted,

                                                    TONY WEST
                                                    Assistant Attorney General

                                                    RONALD C. MACHEN JR.
                                                    United States Attorney

                                                    VINCENT M. GARVEY
                                                    Deputy Director, Federal Programs Branch

                                                    /s/ *Eric B. Beckenhauer*
                                                    ERIC B. BECKENHAUER
                                                    Cal. Bar No. 237526

Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. N.W.
Washington, D.C.  20530
Telephone: (202) 514-3338
Facsimile: (202) 616-8470
E-mail: eric.beckenhauer@usdoj.gov

*Counsel for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September 2010, I caused the foregoing document to be served on all counsel of record electronically by means of the Court's CM/ECF system.

    /s/ *Eric Beckenhauer*
ERIC B. BECKENHAUER
Trial Attorney
U.S. Department of Justice