IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MANI KUMARI SABBITHI, JOAQUINA QUADROS, and GILA SIXTINA FERNANDES,<br><br>Plaintiffs,<br><br>v.<br><br>MAJOR WALEED KH N. S. AL SALEH, MAYSAA KH A.O.A AL OMAR, and STATE OF KUWAIT,<br><br>Defendants. | Case No.: 07-CV-00115-EGS |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO AMEND DECEMBER 16, 2010
ORDER TO INCLUDE LANGUAGE UNDER 28 U.S.C. § 1292(b) PERMITTING
THEM TO APPLY FOR PERMISSION TO TAKE AN INTERLOCUTORY APPEAL**

Defendants Major Waleed KH N.S. Al Saleh and Maysaa KH A.O.A. Al Omar (the "Kuwaiti Diplomats") and the State of Kuwait ("Kuwait") have moved to amend the Court's Minute Order of December 16, 2010 (the "December Order") to include language that would permit them to apply for an interlocutory appeal. The December Order amends the Court's Memorandum Opinion of March 22, 2009 ("March 2009 Opinion"), and its Amended Order of March 24, 2009, to deny the Kuwaiti Diplomats' motion to dismiss and to allow plaintiffs Mani Kumari Sabbithi, Joaquina Quadros, and Gila Sixtina Fernandes ("Sabbithi") to file an amended complaint against the Kuwaiti Diplomats, "reinstate" them in this lawsuit, and "re-serve" them. Defendants seek to appeal because the Court has held that the Kuwaiti Diplomats are immune from Sabbithi's claims in the present lawsuit under the Vienna Convention on Diplomatic Relations ("VCDR"), and the Diplomatic Relations Act, 22 U.S.C. § 254d, therefore mandates that the present suit against the Kuwaiti Diplomats "s*hall be dismissed* (emphasis added)."

**STATEMENT**.

1. <u>**The Kuwaiti Diplomats' Motion to Dismiss**</u>

Sabbithi filed this lawsuit on January 18, 2007. At the time the lawsuit was filed, the Kuwaiti Diplomats were accredited diplomats and resided in the Commonwealth of Virginia. Sabbithi effected service on the Kuwaiti Diplomats in Virginia on January 24, 2007. The Kuwaiti Diplomats moved on March 30, 2007, to dismiss the complaint and quash service of process on grounds of diplomatic immunity under the VCDR. The parties fully briefed that motion. However, Sabbithi moved on August 7, 2007, to stay further proceedings during the pendency of a criminal investigation by the Department of Justice.

On November 8, 2007, Sabbithi withdrew her motion for a stay and filed a "Sur-Reply" in further opposition to the Kuwaiti Diplomats' motion to dismiss. Pls'. Sur-Reply in Further Opp. to Defs.' Mot. to Dismiss and to Quash Service of Process ("Sur-Reply") (dkt. entry # 34). In this Sur-Reply, Sabbithi informed the Court that, on October 31, 2007, her counsel learned that Kuwait had declined to waive immunity with respect to the Kuwaiti Diplomats and that the Kuwaiti Diplomats voluntarily left the United States and returned to Kuwait at the end of September 2007. *Id*. at 2. Sabbithi contended that, even if the Kuwaiti Diplomats were immune from her claims until then, that immunity terminated when they left the United States and their motion to dismiss was moot. *Id*. at 2-3. Furthermore, Sabbithi argued that, even if service of process on the Kuwaiti Diplomats in January 2007 was barred by immunity, the Court should not dismiss Sabbithi's action against them but instead should afford Sabbithi an opportunity to serve the Kuwaiti Diplomats in Kuwait. *Id*.

The arguments Sabbithi made in the Sur-Reply drew responses from both the Kuwaiti Diplomats and the United States. The Kuwaiti Diplomats refuted Sabbithi's contention that the

Court should afford her an opportunity to serve the Kuwaiti Diplomats in Kuwait rather than grant the Kuwaiti Diplomats' motion to dismiss.  Defs. Resp. to Pls.' Sur-Reply at 6-7 & n. 5., filed on December 5, 2007 (dkt. entry #38).  The Kuwaiti Diplomats pointed out that, because Sabbithi's attempted service on them in January 2007 was void due to their immunity, Sabbithi's claims against them had to be dismissed, and Sabbithi would be able to re-assert claims against them only by filing and serving a new complaint.  *Id.*  The Kuwaiti Diplomats also argued that they would be entitled to "residual immunity" under Article 39(2) of the VCDR from any re-asserted claims by Sabbithi.  *Id*. at 2-6.

The United States, in its Statement of Interest filed on July 22, 2008 (dkt. entry #48), refuted Sabbithi's contention that the Kuwaiti Diplomats' motion to dismiss was rendered moot by the fact that they were no longer in the United States.  Statement of Interest of the United States of America at 3 n. 3.  The United States said: "That Defendants are no longer in the United States has no bearing on the central issue now before the Court – namely, whether [the Kuwaiti Diplomats] were immune from service of process when it was attempted in January 2007.  If they were, the attempted service was a nullity, and the Court lacks personal jurisdiction over them."  *Id.*  The United States proceeded to demonstrate that the Kuwaiti Diplomats *were* immune under the VCDR from Sabbithi's claims when Sabbithi attempted to serve them and that, therefore, the Court lacked jurisdiction over them in this lawsuit.  *Id*. at 4-25.  The United States took no position on "the separate question" whether the Kuwaiti Diplomats would enjoy "residual immunity" under Article 39(2) of the VCDR from any future claims Sabbithi might assert against them.  *Id.* at 3 n. 3.

**2.  The March 2009 Opinion**

After considering the parties' lengthy submissions and the United States' Statement of Interest, the Court, on March 22, 2009, issued a Memorandum Opinion granting the Kuwaiti Diplomats' motion to dismiss.  *Sabbithi v. Al Saleh*, 605 F.Supp.2d 122 (D.D.C. 2009).  The Court also issued an Amended Order on March 24, 2009, dismissing Sabbithi's claims against the Kuwaiti Diplomats and quashing Sabbithi's January 2007 service of process on them.

In the beginning of its March 2009 Opinion the Court observed that, in accordance with the VCDR, Congress enacted the Diplomatic Relations Act, 22 U.S.C. § 254d, which provides that any action against an individual entitled to immunity with respect to such action shall be dismissed.  *Sabbithi*, 605 F.Supp.2d at 126.  The Court said: "Therefore, if the Court concludes that defendants are immune, *it must dismiss the action pursuant to 22 U.S.C. § 254d* (emphasis added)." *Id*.

After concluding that the Kuwaiti Diplomats were "entitled to diplomatic immunity," the Court devoted nearly five pages of its published opinion to rejecting Sabbithi's arguments that this immunity should not shield the Kuwaiti Diplomats from liability.  *Sabbithi*, 605 F.Supp.2d at 126 & 126-130.  Thus, the Court held that the Kuwaiti Diplomats' challenged conduct did not fit within the "commercial activity" exception to diplomatic immunity;  that their immunity was not overcome by Sabbithi's allegations that their conduct violated the Constitution or *jus cogens* norms; and that the VCDR was not overridden by the Trafficking Victims Protection Act.  *Id*.  Finally, in a single paragraph in section II.C of the opinion responding to Sabbithi's Sur-Reply, the Court held that, even though the Kuwaiti Diplomats were no longer in the United States, they were entitled to "residual immunity" from Sabbithi's claims under the VCDR.  *Id*. at 130.

In the closing portion of its March 2009 Opinion the Court noted that dismissing Sabbithi's claims against the Kuwaiti Diplomats "may have harsh implications." *Sabbithi*, 605 F.Supp.2d at 130. However, in light of its holding that the Kuwaiti Diplomats were immune from Sabbithi's claims under the VCDR, the Court said it was required to dismiss those claims because "'the law that binds this Court states that '[a]ny action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations … *shall be dismissed*'" (emphasis in the original).

Sabbithi did not move for reconsideration of the March 2009 Opinion and accompanying Amended Order. Sabbithi also did not move under Fed. R. Civ. P. 54(b) for the entry of final judgment with respect to her claims against the Kuwaiti Diplomats, so that she could immediately appeal that Opinion and Amended Order if she was dissatisfied with them.

### 3. Minute Order of February 18, 2010

The Court held a status hearing in this case on February 17, 2010. At the outset of the hearing, the Court announced its intention to grant Sabbithi's motion for reconsideration of the Court's Memorandum Opinion and Order of June 11, 2009, which had granted Kuwait's motion to dismiss Sabbithi's claims against it for failure of service and lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"). *See Sabbithi v. Al Saleh*, 623 F.Supp.2d 93 (D.D.C. 2009). However, the Court also announced that, *sua sponte*, it had revisited its March 2009 Opinion and was "troubled" by the portion of the opinion holding that the Kuwaiti Diplomats enjoyed residual immunity under Article 39(2) of the VCDR after they left the United States and "doubted" it was correct. Transcript of Proceedings, Feb. 17, 2010 ("Tr."), at 7-11. The Court said it was "strongly considering *sua sponte* vacating that section or that portion of its March 20, 2009 opinion dealing with residual immunity." *Id*. at 11. The Court did not announce

any proposed change in its Amended Order of March 24, 2009, dismissing Sabbithi's claims against the Kuwaiti Diplomats.

Defendants' counsel requested and were granted a brief recess to discuss the Court's remarks. Tr. at 13. During the recess, defendants' counsel concluded that, although they believed the Court's residual immunity ruling was correct, the *vacatur* of that ruling would have no adverse effect on the Kuwaiti Diplomats because their dismissal from the case would still stand. Accordingly, defendants' counsel advised the Court at the end of the recess that defendants' consented to the *vacatur* because it would not affect the prior dismissal of the Kuwaiti Diplomats from this case. Tr. at 14. The Court confirmed the limited effect of the *vacatur* and expressed its view that defendants' consent to the *vacatur* was the right course of action. *Id*. Sabbithi's counsel also acquiesced in the limited *vacatur*. *Id*. at 17.

The *vacatur* of the residual immunity portion of the March 2009 Opinion was set forth in the Court's Minute Order of February 18, 2010. That Order recited that, "for the reasons stated on the record during the status hearing held on February 17, 2010, the Court finds it necessary to vacate Section II.C of its March 20, 2009 Memorandum Opinion addressing the Individual Defendants' residual immunity under Article 39(2) of the Vienna Convention on Diplomatic Relations … Accordingly, having received no objections from the parties on the proposed vacatur, the Court hereby vacates Section II.C of its March 20, 2009 Memorandum Opinion pursuant to Federal Rule of Civil Procedure 54(b)." The Court made no other change to that Opinion, in which the Court held that the Kuwaiti Diplomats were immune under the VCDR to Sabbithi's claims against them in this lawsuit. The Court also made no change to its Amended Order of March 24, 2009, dismissing Sabbithi's claims against the Kuwaiti Diplomats in this lawsuit and quashing their January 2007 service of process on them.

Again, Sabbithi did not move for reconsideration of the February 18, 2010 Minute Order. Sabbithi also did not move under Fed. R. Civ. P. 54(b) for the entry of final judgment with respect to her claims against the Kuwaiti Diplomats, so that she could immediately appeal that Order if she was dissatisfied with it.

**4. The December Order**

On May 26, 2010, Sabbithi moved for leave to file an amended complaint against Kuwait and the Kuwaiti Diplomats. On July 19, 2010, Sabbithi also moved under Fed. R. Civ. P. 54(b) to "reinstate" the Kuwaiti Diplomats as defendants in this case and for permission to "re-serve" them. The latter motion was filed nearly two years and nine months after Sabbithi learned that the Kuwaiti Diplomats left the United States and returned to Kuwait, one year and four months after the Court dismissed the Kuwaiti Diplomats from this lawsuit, and five months after the Court let stand that dismissal, all which no objection from Sabbithi. The Court held a hearing on December 16, 2010, to consider these motions as well as Sabbithi's request, set forth in Plaintiffs' Response to the Second Statement of Interest of the United States of America filed on October 4, 2010, that the Court afford Sabbithi an opportunity to "re-serve" Kuwait in light of Sabbithi's belated repudiation of her prior position that she already properly served Kuwait under the FSIA.

The Court announced at the hearing on December 16, 2010, that it had tentatively decided to grant Sabbithi's request for an opportunity to "re-serve" Kuwait in this lawsuit, to grant Sabbithi's motion for leave to file an amended complaint against Kuwait and the Kuwaiti Diplomats, but to deny Sabbithi's motion to "reinstate" the Kuwaiti Defendants in this lawsuit. However, during the arguments by counsel, the Court suggested that the denial of Sabbithi's motion to "reinstate" the Kuwaiti Diplomats would have no real impact given the Court's

intention to grant Sabbithi's motion for leave to file an amended complaint against them. Defendants' counsel respectfully disagreed, pointing out, as Kuwait had in its prior written submissions,[1] that the express terms of the Diplomatic Relations Act mandated the dismissal of Sabbithi's claims against the Kuwaiti Diplomats in this lawsuit. Nevertheless, the Court ultimately concluded that it would grant Sabbithi's motion to "reinstate" and "re-serve" the Kuwaiti Diplomats, as well as Sabbithi's request for an opportunity to "re-serve" Kuwait and Sabbithi's motion for leave to file an amended complaint against both defendants.

The Court's ruling is set forth in the December Order. The December Order recites that, pursuant to Fed. R. Civ. P. 54(b), the Court was revising its March 2009 Opinion for a second time, and also was revising its Amended Order of March 24, 2009 –

> because – as the Court acknowledged during the hearing – when it improvidently ruled on the residual immunity issue in March 2009 the Court failed to consider plaintiffs' argument that should the Court find that the Individual Defendants were improperly served 'the proper remedy [was] not to dismiss Plaintiffs' case, but rather to provide Plaintiffs with the opportunity to serve the Individual Defendants in Kuwait.' Pls.' Surreply Dated Nov. 8, 2007. Upon consideration of this argument, the Court finds plaintiffs' request persuasive, and therefore revises its March 24, 2009 Amended Order and accompanying Memorandum Opinion to GRANT the Individual Defendants' Motion to Quash Service and DENY without prejudice the Individual Defendants' Motion to Dismiss in order to provide plaintiffs the opportunity to attempt service upon the Individual Defendants in Kuwait. The Court finds this decision – as well as its decision to allow plaintiffs to attempt to re-serve Defendant Kuwait – to be consistent with the Circuit's admonition that 'dismissal is not appropriate when there exists a reasonable prospect that service can be obtained.' Novak v. World Bank, 703 F.2d 1305, 1310 (D.C. Cir. 1983)." … [W]ith respect to Plaintiffs' Motion for Leave to File Their First Amended Complaint, as discussed on the record, the Court finds that allowing plaintiffs to file an amended complaint is in the interest of justice as contemplated by the Federal Rule of Civil Procedure 15(a) given the relatively nascent stage of this litigation.

---

[1] *See* Kuwait's Mem. of Pts. & Auths. in Opp. to Pls.' Mot. to Reinstate, and for Permission to Re-Serve, Defs. Al Saleh and Al Omar (dkt. entry #132) at 3; State of Kuwait's Response to U.S. Second Statement of Interest (dkt. entry #140) at 9.

The December Order makes no mention of the Diplomatic Relations Act or defendants' argument that the Act mandates the dismissal of Sabbithi's claims against the Kuwaiti Diplomats

## ARGUMENT

Defendants have satisfied all the criteria of 28 U.S.C. § 1292(b) for the grant of their motion to amend the December Order to include the prescribed language that would allow them to ask the D.C. Circuit for permission to take an interlocutory appeal.[2]  Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

The December Order involves a "controlling question of law" as to which there is "substantial ground for difference of opinion," and an immediate appeal from this Order "may materially advance the ultimate termination" of this lawsuit against the Kuwaiti Diplomats.

---

[2] As a threshold matter, the Court should have denied Sabbithi's Rule 54(b) motion to "reinstate" and "re-serve" the Kuwaiti Diplomats as untimely.  In this Court, Rule 54(b) motions "should be brought within a *reasonable* period after an interlocutory order during the pendency of the litigation (emphasis in the original)." *Tax Analysts v. IRS*, 152 F.Supp.2d 1, 5 n. 4 (D.D.C. 2001), *aff'd in part and rev'd in part on other grounds*, 294 F.3d 71 (D.C. Cir. 2002).  The Court in *Tax Analysts* doubted whether a Rule 54(b) motion filed seven months after the order it sought to revise was timely.  *Id*.  Here, Sabbithi filed her Rule 54(b) motion *one year and four months* after the Court issued the March 2009 Opinion and Amended Order of March 24, 2009, which Sabbithi sought to revise, and *five months* after the Court, on February 18, 2010, invoked the very same Rule 54(b) to amend the very same March 2009 Opinion.  In these circumstances, Sabbithi's Rule 54(b) motion was not brought within a "*reasonable*" period.

### A. Controlling Question of Law

Under 28 U.S.C. § 1292(b), a "controlling question of law" is "'one that would require reversal if decided incorrectly." *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group*, 233 F.Supp.2d 16, 19 (D.D.C. 2002). Thus, "[c]ontrolling questions of law include issues that would terminate an action if the district court's order were reversed." *APCC Services*, *Inc. v. AT&T Corp.*, 297 F.Supp.2d 101, 105 (D.D.C. 2003). For example, a question of law is "controlling" if "it involves issues of personal or subject matter jurisdiction." *Id.*, citing *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990).

The Court's December Order involves issues of both personal and subject matter jurisdiction because, on reconsideration, it denies the Kuwaiti Diplomats' motion to dismiss on grounds of diplomatic immunity and lack of both personal and subject matter jurisdiction. If the December Order were reversed, Sabbithi's present lawsuit against the Kuwaiti Diplomats would terminate. Consequently, the December Order involves a "controlling question of law."

In other cases involving the denial of a motion to dismiss for lack of jurisdiction, the district courts routinely have certified their orders of denial for interlocutory appeal under 28 U.S.C. § 1292(b), and the courts of appeals routinely have granted permission for those appeals to go forward. For example, in *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002), the district court denied a foreign defendant's motion to dismiss for improper service under the Hague Convention and lack of personal jurisdiction, but it certified its denial for interlocutory appeal under 28 U.S.C. § 1292(b) and the Fifth Circuit granted permission for the appeal to go forward. *Accord, GTE New Media Services, Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997); *Nehemiah v. Athletics Congress of the USA*, 765 F.2d 42, 44 (3d Cir. 1985); *Interstate*

*Industries, Inc. v. Barclay Industries, Inc.*, 540 F.2d 868, 869 (7th Cir. 1976); *Leasco Data Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326, 1330 (2d Cir. 1972). In all six of these cases the courts of appeals reversed the district courts' jurisdictional rulings or reasoning as to some or all of the appealing defendants.

In sum, defendants have shown that the December Order involves a "controlling question of law." Therefore, they have satisfied the first prong of 28 U.S.C. § 1292(b).

### B. Substantial Ground for Difference of Opinion

Under 28 U.S.C. § 1292(b), a "substantial ground for difference of opinion" exists "where a court's challenged decision conflicts with decisions of several other courts" or where, even if the court believes its decision is correct, it "also recognizes the arguments in support of contrary conclusions are not insubstantial." *APPC Services*, 297 F.Supp.2d at 107. Furthermore, a "substantial ground for difference of opinion" exists even in the absence of conflicting decisions if "given the novelty of the issues courts could reasonably differ" as to the result. *Al Maqaleh v. Gates*, 620 F.Supp.2d 51, 55 (D.D.C. 2009).

Here, at the very least there is a "substantial ground for difference of opinion" about the correctness of the December Order retroactively denying the Kuwaiti Diplomats' motion to dismiss and instead allowing them to be "reinstated" and "re-served" with Sabbithi's amended complaint in this lawsuit. The Diplomatic Relations Act, 22 U.S.C. § 254d, unambiguously provides that "[a]ny action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations, under sections 254b or 254c of this title, or any other law extending diplomatic

11

privileges and immunities, *shall be dismissed* (emphasis added)."[3]  Sabbithi brought this action against the Kuwaiti Diplomats, and the Court held in the portion of its March 2009 Opinion that has *never* been amended or withdrawn that the Kuwaiti Diplomats are entitled to immunity with respect to this action.  Therefore, by the express terms of the Diplomatic Relations Act, 22 U.S.C. § 254d, the Court had *no choice* but to dismiss this action against the Kuwaiti Diplomats, as it did in March 2009, and should not have changed its mind in the December Order.  *Accord, e.g., Abdulaziz v. Metropolitan Dade County*, 741 F.2d 1328, 1332 (11th Cir. 1984); *Gonzalez Paredes v. Vila*, 479 F.Supp.2d 187, 195 (D.D.C. 2007).

Defendants cannot identify any legitimate way in which the Court's December Order can be reconciled with the Diplomatic Relations Act.  At the status conference on December 16, 2010, Sabbithi distributed an unpublished order in *Estate of Domingo v. Republic of the Philippines*, No. C82-1055 (V) R (W.D. Wash., Nov. 6, 1987), in which the district court initially dismissed Ferdinand and Imelda Marcos, then the rulers of the Philippines, as defendants but five years later, when they were no longer rulers, reinstated them as defendants under Fed. R. Civ. P. 54(b).[4]  However, *Estate of Domingo* did not involve the Diplomatic

---

[3] The legislative history of 22 U.S.C. § 254d underscores the mandatory nature of the dismissal provision.  The relevant bill that was passed by the House of Representative provided that an action against an individual found by the court to be entitled to immunity under the VCDR or similar laws "shall be dismissed upon motion or written application of such individual to the court or administrative authority."  H.R. 7819, 95th Cong. (1978).  However, there was a concern that this language "might be read to impose on the courts a new special motion procedure in immunity cases."  *Hearing Before the Senate Comm. on Foreign Relations on H.R. 7819*, 95th Cong. 18 (1978).  Accordingly, the bill was amended to provide, in the first sentence of 22 U.S.C. § 254d, that, once the court finds an individual to be immune, the action "shall be dismissed," and that, in the second sentence of 22 U.S.C. § 254d, immunity may be established on motion or suggestion by or on behalf of the diplomat.  *Id*. at 18-19, 58-59.  Thus, the legislative history shows that, once immunity is established, dismissal inexorably follows.

[4] *See also* Pls.' Reply Br. in Support of Their Mot. to Reinstate and for Permission to Re-Serve, Defs. Al Saleh and Al Omar (dkt. entry #133) at 2, 6-7.

Relations Act.  The district court initially dismissed the Marcos' based on a Suggestion of Immunity filed by the United States invoking the "head-of-state" immunity doctrine recognized by "customary" international law, not the immunity provided by the VCDR, the Diplomatic Relations Act, or any other statute.  *See Estate of Domingo v. Republic of Philippines*, No. C82-1055V, 1983 WL 482332 at *1 (W.D. Wash. July 14, 1983).  *Accord, In re Grand Jury Proceedings, Doe No. 700*, 817 F.2d 1108, 1110 (4th Cir. 1987) (the "[h]ead-of-state immunity" claimed by Mr. and Mrs. Marcos "is a doctrine of customary international law").  Therefore, the Diplomatic Relations Act, 22 U.S.C. § 254d, did not apply to *Estate of Domingo* – and it was nowhere mentioned by the court in that case – because that Act requires dismissal only when a suit is brought against an individual who is entitled to immunity "under the Vienna Convention on Diplomatic Relations, under section 254b or 254c of this title, or under any other laws extending diplomatic privileges and immunities."

Similarly, with all due respect, the Court's reliance in its December Order on *Novak v. World Bank*, 703 F.2d 1305, 1310 (D.C. Cir. 1983), for the proposition that "'dismissal is not appropriate when there exists a reasonable prospect that service can be obtained,'" is misplaced.  Although that proposition may be true in general, the Supreme Court and other courts have held in a variety of contexts that "'a precisely drawn, detailed statute pre-empts more general remedies.'"  *EC Term of Years Trust v. United States*, 550 U.S. 429, 433 (2007).  *Accord, e.g., Norwest Bank Minn. Nat. Ass'n v. FDIC*, 312 F.3d 447, 451 (D.C. Cir. 2002) ("[w]hen both specific and general provisions cover the same subject, the specific provision will control").  Accordingly, the specific provision in the Diplomatic Relations Act, 22 U.S.C. § 254d, mandating dismissal of any action in which an individual has been held to be immune under the VCDR, supersedes the general policy against dismissal when there exists a reasonable prospect

that service can be obtain. Moreover, because that Act regulates the jurisdiction of the courts to entertain certain claims, "it must be construed both with precision and fidelity to the terms by which Congress expressed its wishes." *Cheng Fan Kwok v. INS*, 392 U.S. 206, 212 (1968). For this additional reason the Court was bound to give effect to that Act in this lawsuit.

The Eleventh Circuit's holding in *Abdulaziz* is instructive in that regard. Plaintiffs in *Abdulaziz* were Saudi Arabian diplomats who sued defendants on grounds of discrimination. The Saudis filed suit before their status as diplomats was certified by the State Department, and the defendants interposed counterclaims. Once the Saudis' diplomatic status was certified, they moved to dismiss their suit and defendants' counterclaims, and the district court granted their motion. On appeal, defendants argued that their counterclaims were compulsory and could not be dismissed under Fed. R. Civ. P. 41(a)(2), which provides that, "[i]f a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication." The Eleventh Circuit rejected this argument, holding that "[t]he counterclaims were dismissed, not because plaintiffs' suit was dismissed, but because of immunity," and "[p]ursuant to 22 U.S.C.A. §254d and the Senate Report accompanying the Act, the action was properly dismissed when immunity was acquired and the court was so notified." 741 F.2d at 1332.

Indeed, in its March 2009 Opinion the Court, not once but *twice*, cited the Diplomatic Relations Act, 22 U.S.C. § 254d, as requiring dismissal of Sabbithi's claims in this action against the Kuwaiti Diplomats if the Court found them immune under the VCDR from those claims. *Sabbithi*, 605 F.Supp.2d at 126, 130. The second time the Court put the words "shall be

dismissed" in italics, emphasizing their command. *Id*. at 130. Defendants have seen no persuasive argument for ignoring that command.

Thus, at the very least, there is a "substantial ground for difference of opinion" about the Court's December Order retroactively denying the Kuwaiti Diplomats' motion to dismiss. Therefore, defendants have satisfied the second prong of 28 U.S.C. § 1292(b).

### C. An Immediate Appeal May Materially Advance the Termination of this Action

Finally, defendants have satisfied the third prong of 28 U.S.C. § 1292(b), which is to show that "an immediately appeal may materially advance the termination of this action." As this Court has recognized, "[w]hen there are substantial grounds for difference of opinion as to a court's subject matter jurisdiction, courts regularly hold that immediate appeal may 'materially advance the ultimate termination of the litigation.'" *Al Maqaleh*, 620 F.Supp.2d at 55. This is so even if the plaintiff will be prejudiced by the delays that may result from an interlocutory appeal, because "in the event that it is ultimately found that this Court lacks jurisdiction to litigate these cases, it would be far better for all concerned, including plaintiffs, to have these matters resolved now, as opposed to sometime in the distant future." *APCC Servs.*, 297 F.Supp.2d at 109.

Defendants have established that, there is a "substantial ground for difference of opinion" about the correctness of the December Order's retroactive denial of the Kuwaiti Diplomats' motion to dismiss. If defendants are permitted to take an interlocutory appeal from that Order and prevail, the result will be the termination of Sabbithi's present lawsuit against the Kuwaiti Diplomats. This quite literally satisfies the third prong of 28 U.S.C. § 1292(b).

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court amend its December Order to include the language prescribed by 28 U.S.C. § 1292(b) for permission to seek to take an interlocutory appeal.

                Respectfully submitted,

                _/s/ Neil H. Koslowe_____
                Neil H. Koslowe (D.C. Bar #361792)
                *Of Counsel*
                Thomas B. Wilner (D.C. Bar #173807)
                SHEARMAN & STERLING LLP
                801 Pennsylvania Avenue, NW
                Washington, DC 20004
                Telephone: (202) 508-8000
                Facsimile: (202) 508-8100

Dated: January 10, 2011            *Counsel for Defendants*