UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

--------------------------X

MANI KUMARI SABBITHI, ET AL, Plaintiffs,

v.

MAJOR WALEED AL SALEH, ET AL, Defendants.

--------------------------X

Docket No. CA 07-115
Washington, D.C.
**February 17, 2010**
3:30 p.m.

***STATUS HEARING***

*BEFORE THE HONORABLE EMMET G. SULLIVAN*
*UNITED STATES DISTRICT JUDGE*

APPEARANCES:

For the Plaintiff: DECHERT, LLP
By: Mr. Craig G. Falls
1775 I Street, N.W.
Washington, D.C. 20006
202.261.3373
*craig.falls@dechert.com*

DECHERT, LLP
By: Mr. David A. Kotler
902 Carnegie Center
Suite 500
Princeton, NJ 08540
609.955.32oo
*david.kotler@dechert.com*

For the Defendant: SHEARMAN & STERLING
By: Mr. Thomas B. Wilner
Mr. Justin L. Harrison
Mr. Neil Koslowe
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
202.508.8000
*twilner@shearman.com*
*justin.harrison@shearman.com*
*neil.koslowe@shearman.com*

Court Reporter: Catalina Kerr, RPR, CRR
U.S. District Courthouse
Room 6716
Washington, D.C. 20001
202.354.3258
*catykerr@msn.com*

Proceedings recorded by mechanical stenography, transcript produced by computer.

P-R-O-C-E-E-D-I-N-G-S

(3:30 P.M.; OPEN COURT.)

THE DEPUTY CLERK: Please remain seated and come to order. Civil Action 07-115, Mani Kumari Sabbithi, et al versus Major Waleed Al Saleh, et al. Would counsel please identify yourselves for the record.

MR. KOTLER: Good afternoon, Your Honor. David Kotler from the Dechert law firm. With me is Craig Falls, who's a member of the bar. It was pointed out to me on my way over, although I have filed a notice of appearance in this case, I -- pro hoc vice papers have not been filed. I've been admitted in other cases in this District and I've raised it with counsel, and with the Court's permission, if I can appear today and speak on behalf of Ms. Sabbithi, I promise to file my pro hoc vice forthwith.

THE COURT: That's fine. I have no problems with that. All right. Counsel.

MR. WILNER: Tom Wilner with Shearman & Sterling, and I'm accompanied here by Neil Koslowe and Justin Harrison.

THE COURT: All right. Good afternoon. Sorry to keep you waiting. Let me talk for awhile, and then I'll hear from counsel.

Let me go back over the history of what's happened

here and maybe some things that didn't happen that were overlooked, but we'll try to get this case back on track here for a prompt and complete adjudication in this court.

On January the 18th, 2007, Plaintiffs Mani Sabbithi and Joaquina Quadros and Gila Fernandes, all of whom are domestic workers from India, brought this action against their former employers, Major Waleed Al Saleh, a Kuwaiti diplomat, and his wife Maysaa Al Omar, collectively the Individual Defendants, as well as the State of Kuwait. Plaintiffs assert -- they asserted numerous causes of action related to their alleged trafficking and forced labor by the Individual Defendants, including involuntary servitude, fraud, false imprisonment, infliction of emotional distress, assault and battery and civil conspiracy.

This tortious conduct is alleged to have occurred while the Defendant Al Saleh was employed as Attache to the Embassy of Kuwait in the United States, and while Plaintiffs were living at the Individual Defendants' home in McLean, Virginia, Plaintiffs assert the claims against the Defendant Kuwait under aider-and-abettor and agency principles of liability.

On March 20th, 2009, the Court granted the Individual Defendants' motion to dismiss and quash service concluding that the Individual Defendants were immune from suit under Article 31 of the Vienna Convention on Diplomatic

Relations, that is, the Vienna Convention. The Court also found that the Individual Defendants who returned to Kuwait in September '07 maintained residual immunity from suit under Article 39 of the Vienna Convention. Soon thereafter, on June the 11th, 2009, the Court granted Kuwait's motion to dismiss concluding that Plaintiffs had failed to effect proper service on Kuwait under the Foreign Service [sic] Immunities Act.

Plaintiffs then filed a motion for reconsideration of the Court's June 2000 -- June 11, 2009 decision dismissing the Defendant Kuwait. Pending before the Court is Plaintiffs' motion for reconsideration of the Court's June 11, 2009 memorandum opinion and order granting Defendant Kuwait's motion to dismiss. In their motion for reconsideration, Plaintiffs argue that the Court erred in its determination that Plaintiffs failed to effectuate service on Defendant Kuwait in compliance with the second enumerated method of service under the Foreign Service Immunities Act, FSIA.

Having carefully considered Plaintiffs' motion for reconsideration, the response and reply thereto, the Court's June 11, 2009 memorandum opinion and order, the briefs filed in support of and in opposition to Kuwait's motion to dismiss as well as the applicable law, the Court will grant Plaintiffs' motion for reconsideration.

Federal Rule of Civil Procedure 4(j) governs the service of process upon foreign governments. That rule

directs that service upon a foreign state shall be effected pursuant to the provisions of FSIA. The FSIA, in turn, sets forth a hierarchal list of methods by which service can be effected. A method is available only if the previously enumerated option is in some way foreclosed. Reliance upon our circuit authority, *The Congo versus FG Hemisphere Associates,* 508 F.3d 1062.

In this case it is undisputed that Plaintiffs were unable to service -- to effect service upon Kuwait in accordance with the first method of the FSIA. The issue therefore is whether Plaintiffs were able to effect service under the second method of FSIA which permits service, in quote, in accordance with an applicable international convention on service of judicial documents, pursuant to 28 U.S. Code, Section 1608(a)(2).

Plaintiffs argue that the Court's June 11, 2009 memorandum opinion and order overlooked Plaintiffs' service of Kuwait under Article 9 of the Hague Service Convention, which allows for service of process on a foreign state through diplomatic channels, quote, if exceptional circumstances so require, end quote, according to Hague Service Convention, Article 9.

Plaintiffs assert that service of a claim on a foreign sovereign is recognized as an exceptional circumstance warranting service through diplomatic channels, and this court

agrees. And in this regard I refer counsel to the Practical Handbook on the Operation of the Hague Service Convention, the Third Edition, 2006. The Court erred, therefore, in failing to consider whether Plaintiffs effected service on Kuwait pursuant to Article 9 of the Hague Service Convention by causing the United States Embassy in Kuwait to deliver to the Ministry of Foreign Affairs in Kuwait a diplomatic note accompanied by the summons and complaint, along with the Notice of Suit and translations into Arabic on August 17, 2008, and that's reflected at Docket No. 57.

Having now fully considered Plaintiffs' argument and the opposition thereto, the Court concludes that Plaintiffs did satisfy the second enumerated service -- strike that -- the second enumerated method of service under FSIA by serving Defendant Kuwait in accordance with Article 9 of the Hague Service Convention.

Accordingly, the Court's June 11, 2009 memorandum opinion and order dismissing the case against Kuwait for improper service of process under the FSIA was in error and that order shall be vacated.

Now that the Court has determined that its dismissal of Plaintiffs' action against Defendant Kuwait for improper service of process was in error, the Court must now reach the merits of Defendant Kuwait's jurisdictional arguments regarding its immunity from suit under the FSIA. Before these

complex jurisdictional arguments can be resolved, however, the Court finds it necessary to bring an additional issue to the attention of the parties.

In the course of reviewing the briefs filed in support of and in opposition to Defendant Kuwait's motion to dismiss and the cases cited therein, the Court had the opportunity to revisit its March 20th, 2009 memorandum opinion and order which dismissed Plaintiffs' claims against the Individual Defendants on the grounds of diplomatic immunity.

To refresh everyone's recollection, should recollection need to be refreshed, the Court's March 20th, 2009 memorandum opinion addressed the Individual Defendants' diplomatic immunity under Article 31 and Article 39 of the Vienna Convention on diplomatic relations. As the Court explained in its opinion, Article 31 provides diplomats with near-absolute immunity from civil liability in the receiving state.

Article 39, by contrast, narrows the scope of diplomatic immunity for former diplomatic officials. It provides that, quote, immunity shall continue to subsist, end quote, only, quote, with respect to acts performed by a former diplomatic official in the exercise of his functions as a member of the mission, end quote.

Upon further reflection on the Court's March 20th,

2009 decision, the Court is now troubled by its determination that the Individual Defendants' residual immunity under Article 39(2) of the Vienna Convention remains intact because, quote, Defendants' conduct in employing Plaintiffs was not performed outside the exercise of Defendants' diplomatic functions. That's what the Court said in its Memorandum Opinion 15.

And I quote: First and most importantly, it appears that the Court's ruling on the issue of residual immunity was rendered improvidently because the issue was not properly before the Court. While Plaintiffs raised the issue of residual immunity in their November 8th, 2007 surreply, the Government explained in its Statement of Interest, which was filed in the case on July 22nd, 2008, that the issue of residual immunity did not need to be addressed by the Court because, quote, the record does not indicate that service was effected at a time when Defendants were not immune from service of process, end quote. That's Docket No. 48 at 3, note 3.

Indeed, the record in this case indicates that the Individual Defendants were served on January 24, 2007 while Mr. Saleh was still a diplomatic agent at the Embassy of Kuwait. It does not appear that the Individual Defendants were served after Mr. Saleh's diplomatic duties in the United States had ended and after the Individual Plaintiffs had

returned to Kuwait.

Because the Individual Defendants were not served with process at a time after the Individual Defendants had departed the United States, it appears that the Court exceeded its authority in rendering a ruling on the merits on the Individual Defendants' residual immunity.

Second, even if the issue were properly before the Court, two recent rulings in the Southern District of New York cast doubt on this court's conclusion with regards to residual immunity. Those cases are *Swarna v. Al-Awadi,* A-l-hyphen-A-w-a-d-i, 607 F.Supp.2d 509, 2009 S.D.N.Y decision, and, I'll spell it, *B-a-o-a-n-a-n v. Baja,* B-a-j-a, 627 F.Supp.2d 155, another 2009 decision of that court.

Both cases held, under facts similar to the ones presented in this case, that the Plaintiffs' suits were not barred by the Individual Defendants' residual immunity because the employment of domestic workers by the Individual Defendants, quote, was a private act, not an official act, end quote, which, quote, bore no relationship to the functions of a diplomatic mission, end quote, citing *Swarna,* at 520.

While neither of those decisions is binding precedent on this court, the Court finds their analysis persuasive. The Court is also persuaded by the Statement of Interest that the Government filed in the *Baoanan* case, which, quote, respectfully disagrees, end quote, with the

residual immunity ruling that this court made, and that's reflected at the Docket No. 31 of the *Baja* case.

Specifically -- specifically, the Court -- strike that. Specifically the Government asserted in *Baoanan* that, and I quote, Although the *Sabbithi* court correctly held that Defendants were immune from suit as accredited diplomats, the Court also briefly addressed the issue of residual immunity, holding that Defendants' immunity remained intact under Article 39(2) of the Vienna Convention after they left their diplomatic posts in the United States because Defendants' conduct in employing Plaintiffs was not performed outside the exercise of Defendants' diplomatic functions.

It appears that the Court's reasoning for its holding on residual immunity was premised on the belief that if the hiring of domestic workers is not a commercial activity under Article 31(1)(c), it follows that it must be an official act and therefore merits the residual immunity provided under Article 39(2). The United States respectfully disagrees with this analysis, end quote.

The Government went on to explain that, quote, while Article 31(1)(c) provides an exception to diplomatic immunity for commercial activity conducted outside a diplomat's official function, it does not follow that those acts of an accredited diplomat that do not fall within the commercial activity section are official acts for the purposes of

residual immunity under Article 39(2), end quote. The Government explained that, quote, there is a broad scope of conduct that is neither commercial nor official for which former diplomats do not enjoy immunity, end quote.

The Court finds this information to be very persuasive. Indeed, if the Court had been apprised -- had been apprised of this position earlier, it undoubtedly would have influenced the Court's decision on the issue.

Therefore, because it does not appear that the issue of residual immunity was properly before this court and in view of the persuasive analysis on the issue of residual immunity presented in the *Swarna* and the *Baoanan* opinions as well as in the Government's Statement of Interest in the *Baoanan* case, the Court is strongly considering *sua sponte* vacating that section or that portion of its March 20, 2009 opinion dealing with residual immunity.

Federal Rule of Civil Procedure 54(b) states in relevant part, and I quote, that any order or other decision that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities, end quote. Because the Court's March 20th, 2009 memorandum opinion and order adjudicated fewer than all the claims or the

rights and liabilities of fewer than all the parties, it is subject to revision by this court.

Before vacating the residual immunity section of the March 20th, 2009 memorandum opinion and order, however, I will give the parties the opportunity to respond to the Court's proposed course of action, and the parties are therefore directed to show cause why this court should not vacate the residual immunity section of its March 20th, 2009 memorandum opinion by no later than February the 26th of this year.

Now, the Court recognizes that if it proceeds to vacate its ruling on residual immunity, that may have some impact on the briefs that were heretofore submitted to the Court with regards to Defendant Kuwait's motion to dismiss. I mean, for instance, the Court's aware that the Plaintiffs have relied upon the residual immunity portion of the March 20, 2009 memorandum opinion in arguing that the Court previously determined that the Individual Defendants were acting within the scope of their official functions as Kuwaiti diplomats when they were employed -- when they had employed Plaintiffs.

I'll therefore give the parties an opportunity to file supplemental briefs in support of and in opposition to Kuwait's motion to dismiss. I would also like for Defendant Kuwait to expand upon that section of its reply brief addressing Plaintiffs' arguments on subsection (i) aider and abettor liability under the non-commercial torts exception to

the FSIA, and (ii) the discretionary function provision of the non-commercial torts exception with regards to Kuwait's alleged confiscation of Plaintiffs' passports.

In that regard, I'll issue a briefing schedule on these issues after a final determination is reached on the residual immunity section of the Court's March 20th, 2009 memorandum opinion and order, but I think that that ruling should -- should predate the filing of supplemental authorities vis-a-vis Kuwait's motion to dismiss, et cetera.

So, I've run out of things to say. That's all I have to say. Are those dates not convenient for the parties? February the 26th? I mean, everyone's calendar -- has been skewed by the weather, so I'm mindful of that. Indeed, our calendar was no exception. You want to talk among yourselves for a couple of minutes or what?

MR. WILNER: Yes, Your Honor.

THE COURT: I was going to give both sides until February 26th, but I can let you talk for a few minutes since I sprung all this on everyone, didn't give you a chance to argue a pro hoc vice motion.

MR. WILNER: I'm glad it wasn't in response to my argument.

THE DEPUTY CLERK: This honorable court now stands in a short recess.

(A BRIEF RECESS WAS TAKEN.)

THE DEPUTY CLERK: Please remain seated.

THE COURT: There's one alternative that I didn't suggest, and that is, you have a pretty good indication of what I'm going to do. If the parties have no objections, you can tell me now, or if there are objections, I'm not going to go back on what I said, you know.

MR. WILNER: Well, Your Honor, that's what we were going to suggest. That's what I'm thinking of. I -- we don't object to you vacating that portion of the order.

THE COURT: I think it's the appropriate thing to do, and I'll give you time to supplement your motion then because you did address the residual immunity issue in your motion to dismiss.

MR. WILNER: Well, you mean on the motion with respect to dismissal of the State of Kuwait. As I understand it, if I can understand it, although that portion of the opinion is vacated, since service was not attempted on them when they left, the dismissal as to the individual still stands because they were not -- they were not served correctly, so that doesn't -- but it's just vacated.

THE COURT: I'm vacating that portion of Article 39.

MR. WILNER: May I say before going on to the next thing?

THE COURT: Sure.

MR. WILNER: May I say for both, I very much respect

Your Honor for doing this. I really do think you were right originally and we were going to take that up. I think the Government's Statement of Interest in that is wrong. Their reliance in Professor Elzinga, who's not even an expert in this area, I think, is wrong, but in any event, we respect what Your Honor has done.

Also, I will say with respect to the idea that Section 4 of the service is merged into Section 2, I also think you were right, but let's just get on to the merits. That's fine with us. But what I do suggest is we get a briefing schedule on the motion to dismiss against Kuwait, and I don't -- we were talking. I don't know whether we should go first and supplement, or they should go first and we respond. We would like a little time to deal with that at your convenience.

THE COURT: What's your preference?

MR. WILNER: I thought that you guys should go first and we next, but we don't care.

MR. KOTLER: We both want the last word obviously, but --

THE COURT: I'm the last word.

(LAUGHTER.)

MR. KOTLER: Since it is their motion, and I'm usually in Mr. Wilner's side, I would understand them having the last word, so I think it would make sense, since they

briefed it last, for us to go first, if you will, in addressing and filing the supplemental papers in light of the residual immunity vacatur and then for them to respond.

THE COURT: How much time do you need, Counsel?

MR. KOTLER: I have co-counsel involved here. I would say, I think, three weeks would be sufficient.

THE COURT: All right. We'll pick some dates out along that general time frame. How much time for your response, Mr. Wilner?

MR. WILNER: I think about the same, whatever you think.

THE COURT: Three weeks. All right. One submission each?

MR. WILNER: Yeah.

MR. KOTLER: Yes.

THE COURT: And I'll probably bring you back. These are complicated issues. I'll probably bring you back. Just one second.

(PAUSE.)

THE COURT: I tell you what, we'll get some dates that --

MR. WILNER: Okay.

THE COURT: That we believe will be acceptable to counsel. We're looking at a three-week time frame for Plaintiffs' counsel and three weeks for Defense counsel. All

right. And I'm sure I'll bring you back. I don't have a date in mind right now or time frame right now, but I'm sure I'll bring you back. No chance of a resolution of any of this, right?

MR. WILNER: The State of Kuwait feels very strongly that they are immune.

THE COURT: Yeah. All right. Okay.

MR. WILNER: Thank you, Your Honor.

MR. KOTLER: Thank you.

THE COURT: Good to see everyone. Happy New Year.

THE DEPUTY CLERK: This honorable court now stands in recess.

(PAUSE.)

THE COURT: Counsel, I am going to make an assump- -- I just need to get on the record. If I heard Defense counsel correct, Mr. Wilner correctly, he has no objection to vacating that portion of the 39 opinion. I assume you don't object to that.

MR. KOTLER: We have no objection, Your Honor.

THE COURT: All right. I just want to make sure on the record. Okay.

(PROCEEDINGS END AT 3:55 P.M.)

*-*-*-*

**CERTIFICATE OF REPORTER**

I, Catalina Kerr, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

______________________________ ____________________
Catalina Kerr Date