**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MANI KUMARI SABBITHI, JOAQUINA QUADROS, and GILA SIXTINA FERNANDES,

Plaintiffs,

v.

MAJOR WALEED KH N.S. AL SALEH, MAYSAA KH A.O.A. AL OMAR, and STATE OF KUWAIT,

Defendants.

Case No. 07-CV-00115-EGS

**PLAINTIFFS' STATUS REPORT**
**IN RESPONSE TO THE COURT'S APRIL 27, 2011 MINUTE ORDER**

On May 12, 2011, Defendants' counsel confirmed that the State of Kuwait had received service of the Amended Complaint. For that reason, this status report focuses on the efforts by the Plaintiffs, Mani Kumari Sabbithi, Gila Sixtina Fernandes, and Joaquina Quadros, to effect service against the Individual Defendants, Waleed KH N.S. Al Saleh and Maysaa KH A.O.A. Al Omar (the "Individual Defendants").

The Plaintiffs remain entitled to proceed against the Individual Defendants in this lawsuit notwithstanding the Court's decision to vacate the Individual Defendants' reinstatement.[1] As the Court recognized at the December 16, 2010 hearing, the Individual Defendants may be brought back into the case through two independent routes: (i) through service of an amended complaint on the Individual Defendants; and (ii) through reinstatement of the Individual Defendants. Dec.

[1] As instructed in the April 27, 2011 Minute Order, the Plaintiffs conferred with the Defendants in an attempt to file a joint status report with recommendations for further proceedings. *See* May 13, 2011 Joint Status Report. Despite their best efforts, the parties were unable to reach an agreement on all issues. A separate Joint Status Report has been filed for that portion of the procedural status on which the parties agree. The Plaintiffs submit this status report in support of their view of the procedural posture of the case and their recommendations for the Court.

16, 2010 Tr. at 9:2-7.  The Plaintiffs agreed that service of an amended complaint would bring the Individual Defendants back into the action, but requested that the Court also grant the motion reinstate.  *Id.* at 22:11-17; 28:10-20.

Although the Court decided at the December 16 hearing to grant Plaintiffs' motion to reinstate (Dec. 16, 2010 Minute Order), it never deviated from its view that granting that motion was unnecessary to bring the Individual Defendants back into the action.  As the Court pointed out, merely serving the Amended Complaint on the Individual Defendants would by itself permit the case against them to continue.  Therefore, the Court's vacatur of its reinstatement of the Individual Defendants simply puts the Plaintiffs back into the position the Court described at the December 16 hearing:  the action against the Individual Defendants may proceed once the Amended Complaint is served on them.  *See* Apr. 27, 2011 Minute Order.

Plaintiffs believe that service on the Individual Defendants is now complete.  As the Plaintiffs have informed the Court in their monthly status updates, the Kuwaiti Central Authority received service packets for each of the Defendants on January 23, 2011.  *See, e.g.*, ECF No. 155 (Plaintiffs' April 21, 2011 Status Report on Service), at 1, and Plaintiffs' agent, Legal Language Services (LLS), has received unofficial confirmation from a Central Authority employee that the Authority had in fact served each of the Defendants.  *Id.* at 1-2 & ECF No. 155-1 (Declaration of Vicki Farron ("First Farron Decl.")), ¶ 3.  However, the Central Authority has not sent the Plaintiffs the formal confirmation of service it is required to provide under the Hague Service Convention.  First Farron Decl. ¶ 10.  Likewise, despite repeated inquiries, counsel for the Individual Defendants has refused to confirm that the Individual Defendants have been served. Ex. 1 (Apr. 26, 2011 letter from Lorelie S. Masters to Thomas Wilner); Ex. 2 (May 12, 2011 email from Neil Koslowe to Martina Vandenberg).

Thus, to advance this case towards a resolution on the merits, the Plaintiffs respectfully ask that the Court: (1) confirm that the Plaintiffs can proceed against the Individual Defendants in this case by serving them with the Amended Complaint; (2) hold a status conference within twenty days, by which time the Individual Defendants' counsel will have contacted their clients and will be ready to confirm that the service packets have been received; and (3) establish a briefing schedule for the Individual Defendants' motion to dismiss, if any.[2]

## BACKGROUND

### I. The December 16, 2010 Hearing.

At the December 16, 2010 hearing, the Court addressed three pending motions: "Plaintiffs' motion for leave to file their First Amended Complaint, Plaintiffs' motion to re-instate and for permission to re-serve the Individual Defendants, and Plaintiffs' request to re-serve Kuwait." Dec. 16, 2010 Tr. at 4:14-17. Before hearing argument from either party, the Court announced how it was "inclined to rule" after "[h]aving carefully reviewed the many motions, oppositions, replies, surreplies and what the Court will call responses in this case as well as the United States' Second Statement of Interest." *Id.* at 4:24-5:7. The Court stated that it was "inclined to grant Plaintiffs' request to re-serve Kuwait and afford Plaintiffs a limited . . . period of time in which to attempt to effect service over Kuwait." *Id.* at 5:7-10. It was "inclined to grant Plaintiffs' request to file an amended complaint." *Id.* at 7:10-11. It also was "inclined to deny Plaintiffs' motion to reinstate and for permission to re-serve the Individual Defendants . . . [b]ecause it [was] the Court's opinion that proper service of an amended complaint on the individual Defendants could allow Plaintiffs to bring these individuals back into the pending action." *Id.* at 9:2-7.

---

[2] The parties have agreed to a proposed briefing schedule for the State of Kuwait's renewed motion to dismiss. *See* May 13, 2011 Joint Status Report.

Defendants' counsel applauded the Court for its stated intention to deny the motion to reinstate, calling it "absolutely correct." *Id.* at 10:24. The Court responded that a denial of the motion to reinstate would have no practical impact on the case because granting the Plaintiffs leave to amend would effectively reinstate the Individual Defendants anyway:

> Either way . . . the individuals are back before the Court. If I reinstate, they're back before the Court. If I allow them to file an amended complaint, they're back. I don't really see the marked difference between the two – the two ways to bring the Plaintiffs – the individuals back before the Court.

*Id.* at 11:1-6.

The Court then asked the Plaintiffs' counsel, "If I grant your motion to serve Kuwait and for leave to file an amended complaint, is it necessary for the Court to reinstate the individual Defendants?" *Id.* at 22:11-13. Counsel responded, "No, Your Honor. The Plaintiffs believe that the Court is correct that by granting leave to amend, that will bring the individual Defendants back in the case." *Id.* at 22:14-17. The Plaintiffs' counsel later reiterated, "The Plaintiffs believe that Your Honor is correct, that permitting them to file the amended complaint will bring the individual Defendants back into the case." *Id.* at 28:10-13.

Nevertheless, the Plaintiffs' counsel stated that the Plaintiffs "would prefer Your Honor to reinstate the individual Defendants," as "that will make the issue a little bit more clear[] on appeal because there are some potential statute of limitations problems and a potential problem perhaps under some of the federal rules about the amendment issue." *Id.* at 28:14-20. After hearing additional argument on the reinstatement question, the Court took a brief recess, and then announced that it was now inclined to grant the motion to reinstate:

> I think that I'm going to depart from the announced ruling earlier. I will – I think the more appropriate route for the Court is to reinstate those Defendants under [Fed. R. Civ. P.] 54(b), and, you know, it's no problem saying that you overlook[ed] something, and

> indeed, the Court did not consider the alternative request to re-serve those individuals and dismiss the Plaintiffs.

*Id.* at 42:11-18.

The Court went on to explain that it also would grant the Plaintiffs' motions for leave to re-serve Kuwait and for leave to file their First Amended Complaint. *Id.* at 43:5-12. It memorialized those rulings in its December 16, 2010 Minute Order, in which it also required the Plaintiffs to "take all steps that are within [their] control to effect service of process upon the Individual Defendants and Defendant Kuwait" by January 20, 2011, and "file a status report with the Court no later than January 20, 2011 apprising the Court of their efforts in this regard and every thirty days thereafter." Dec. 16, 2010 Minute Order.

**II. Plaintiffs' Service of Process on the Defendants.**

In accordance with the Court's December 16, 2010 Minute Order – and at the cost of thousands of dollars – the Plaintiffs took all steps within their control to effect service on all of the Defendants by January 20, 2011. They retained LLS to assist with the service of process; determined the address at which the Individual Defendants were residing in Kuwait and received LLS' corroboration of that address; sought and executed summonses for the Individual Defendants and the State of Kuwait; translated the required documents into Arabic; and sent the required documents via Federal Express to the Kuwaiti Central Authority in compliance with Articles 3-6 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Service Convention"). ECF No. 149 (January 20, 2011 Status Report), at 2-3. Federal Express confirmed that the Central Authority received the packets on January 23, 2011. ECF No. 151 (Feb. 18, 2011 Status Report on Service), at 1 & Exs. 1, 2.

Having received the service packets and requests, the Central Authority has certain responsibilities under the Hague Service Convention. "If the Central Authority considers that the

[service] request does not comply with the provisions of the present Convention it shall *promptly* inform the applicant and specify its objections to the request." Hague Service Convention, Art. 4 (emphasis added). If the Central Authority determines that the service request *is* compliant, then it "shall itself serve the document[s] or shall arrange to have [them] served by an appropriate agency . . . by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory." *Id.*, Art. 5. If service is effective, then the Central Authority must complete a certificate that "shall state that the document[s] ha[ve] been served and shall include the method, the place and date of service and the person to whom the document[s] w[ere] delivered." *Id.*, Art. 6. If the Central Authority's attempts to effect service are unsuccessful, then it must complete a certificate that "shall set out the reasons which have prevented service." *Id.*

Neither the Plaintiffs nor LLS has received any formal communication from the Central Authority in the sixteen weeks that have passed since the Authority received the service packets. Nevertheless, after repeated attempts over two months to contact the Central Authority by telephone and fax, LLS received unofficial confirmation from a Central Authority employee on April 18, 2011, that the service packets had been delivered to the Defendants. ECF No. 155 (Apr. 21, 2011 Status Report on Service), at 1-2; ECF No. 155-1 (First Farron Decl.), ¶ 3. That employee promised to have another employee fax a confirmation of service to LLS the next day. ECF No. 155, at 2; ECF No. 155-1, ¶ 4. However, LLS never received such a confirmation, and its subsequent attempts to contact the Authority to inquire about the confirmation have been unavailing. ECF No. 155, at 2; ECF No. 155-1 (First Farron Decl.), ¶¶ 5-9; Ex. 3 (Second Declaration of Vicki Farron ("Second Farron Decl."), ¶¶ 3-4).

The Kuwaiti Central Authority's refusal to provide official confirmation of service is not unusual, according to LLS. Vicki Farron, an employee at LLS with experience serving Kuwaiti defendants through the Central Authority, stated in her April 21, 2011 Declaration that "LLS has attempted to serve Kuwaiti defendants approximately 5 times in the last two years. Out of all those attempts, LLS has received proof of service from the Kuwaiti Central Authority only once (despite the fact that service has been effected on numerous occasions)." ECF No. 155-1 (First Farron Decl.), ¶ 10. On that one occasion, the Central Authority did not send LLS or the plaintiffs the proof of service. Instead, it sent the proof of service to Process Forwarding International (PFI), the American Central Authority, which then forwarded the proof of service to LLS. *Id.* ¶ 11. Ms. Farron contacted PFI on April 20, 2011, to see if they had received any proofs of service in this matter. ECF No. 155-1, ¶ 12. She received confirmation on April 26, 2011, that PFI had not received any proofs of service relating to this case. Ex. 3 (Second Farron Decl.) ¶ 5.

In an effort to confirm the Central Authority's unofficial statement that service had been effected, the Plaintiffs sent a letter on April 26, 2011, to counsel for Defendants. *See* Ex. 1. In that letter, the Plaintiffs reviewed the claims in the Farron Declaration that service was complete. They also informed opposing counsel of the State of Kuwait's responses to a 2003 questionnaire from the Hague Conference on Private International Law, in which the State of Kuwait claimed that, on average, it took "one week" for the Kuwaiti Central Authority to perform requests for service. *Id.* at 1. Because far more than one week had passed since the Kuwaiti Central Authority had received the service packets; the Central Authority had unofficially confirmed that service had been effected; and the Authority had a history of not providing formal confirmations of service, the Plaintiffs asked opposing counsel to "contact all of [his] clients in advance of the

status conference on Thursday, April 28, 2011, to determine whether they indeed have received the service packets." *Id.* at 2. As of the date of this filing, counsel for the Defendants has not confirmed whether the Individual Defendants have received their service packets. Ex. 2.

**III. The April 27, 2011 Minute Order.**

On April 27, 2011, upon review of the briefing related to the Defendants' motion for certification for interlocutory appeal of the December 16, 2010 Minute Order, the Court vacated its decision granting Plaintiffs' motion to reinstate the Individual Defendants. The Court reasoned that, because the Individual Defendants had diplomatic immunity at the time they were served with the initial complaint, the March 20, 2009 Order properly dismissed the Individual Defendants under the Diplomatic Relations Act (DRA), 22 U.S.C. § 254d. The Court further held that its February 2010 vacatur of the residual immunity holding in its March 2009 opinion did not affect its prior decision to dismiss the Individual Defendants under the DRA, and that the DRA prevented it from reinstating the Individual Defendants. Apr. 27, 2011 Minute Order. Accordingly, the Court vacated "that portion of its December 16, 2010 Minute Order which granted Plaintiffs' Motion to Re-instate, and for Permission to Re-serve, the Individual Defendants." *Id.* The Court did not alter the portions of the December 16, 2010 Minute Order granting the Plaintiffs' motion for leave to file their First Amended Complaint and granting the Plaintiffs' request for permission to re-serve the State of Kuwait.

## ARGUMENT

There is no dispute that the Plaintiffs may proceed against the State of Kuwait in this lawsuit. The Court has granted the Plaintiffs permission to re-serve the State, and the Plaintiffs have taken all steps within their control to effect such service. Indeed Kuwait has acknowledged

service and the parties have agreed to a briefing schedule for Kuwait's renewed motion to dismiss.

The only question before the Court is whether the Plaintiffs may proceed against the Individual Defendants in this lawsuit. The answer – which the Court itself provided at the beginning of the December 16 hearing – is yes. At that hearing, the Court identified two independent methods by which the Individual Defendants could be brought back into the case: first, by serving the Amended Complaint on the Individual Defendants, the Plaintiffs could "bring these individuals back into the pending action." Dec. 16, 2010 Tr. at 9:2-7. Second, the Court could reinstate the Individual Defendants even before the Amended Complaint was served. As the Court observed, "If I reinstate [the Individual Defendants], they're back before the Court. If I allow [the Plaintiffs] to file an amended complaint, they're back. I don't really see the marked difference between . . . the two ways to bring . . . the individuals back before the Court." *Id.* at 11:1-6.

In vacating its reinstatement order, the Court has now determined that the second method cannot succeed, because under the DRA, the Individual Defendants needed to be dismissed. But that determination in no way undercuts the Court's first method for bringing the Individual Defendants back into the action – through service of the Amended Complaint. Even though the Individual Defendants have been dismissed, they never requested that their dismissal be transformed into a final dismissal under Rule 54(b). Accordingly, they remain parties to the case and can be brought back into the case through service of the Amended Complaint, as they no longer enjoy immunity from suit.

The Court's position at the December 16 hearing is consistent with precedent in this Circuit. *See Dooley v. United Technologies Corp.*, 152 F.R.D. 419 (D.D.C. 1993). In *Dooley*,

the plaintiff brought suit against a host of defendants. One of the defendants, Frank Basil, moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted. The court granted the motion to dismiss in June 1992. *Id.* at 421.

Seven months later, the plaintiffs moved for leave to amend the complaint to add new allegations about Basil. Basil opposed the motion on the basis the Individual Defendants are likely to advance here: that because he was dismissed from the action, he could not be brought back into the case through an amended complaint. Basil argued that "[Fed .R. Civ. P.] 15(c) precludes any addition of [himself] to the case via amendment, because Rule 15(c) only permits the addition of a party in cases where the identity of the party was initially mistaken, and that [was] not the case here." *Id.* at 422.

The court held that "[t]his argument . . . is defeated by the operation of Federal Rule 54(b)." *Id.* at 423. It explained:

> Rule 54(b) requires the Court, upon issuing an order in a case involving multiple claims or parties, to make certain express determinations with respect to the order. Without such determinations on record, the rule commands, the order is not final and may be revised any time up until the final disposition in the case.

*Id.* at 423-24. As a result, under the terms of Rule 54(b), a "nonfinal order on the status of parties in a multi-party cases . . . *shall not terminate the action as to any of the claims or parties*." *Id.* at 424 (quoting Fed. R. Civ. P. 54(b)) (emphasis in original). Thus, although the court had dismissed Basil seven months earlier, "Basil remained a party to the case" because that dismissal was not final, and the plaintiff could properly amend his complaint to revive his claims against Basil. *Id.*

The situation here is analogous. The Court already has recognized that its March 20, 2009 Order dismissing the Individual Defendants "adjudicated fewer than all the claims or the

rights and liabilities of fewer than all the parties," and is therefore "subject to revision by this court" under Rule 54(b). Feb. 17, 2010 Tr. at 11:24-12:2. The March 2009 Order remains the operative order regarding the dismissal of the Individual Defendants, and none of the Court's subsequent rulings have transformed the March 2009 Order into a final dismissal under Rule 54(b) . *See* Fed. R. Civ. P. 54(b) (stating that an order of dismissal, "however designated," is not a final dismissal unless it "expressly determines that there is no just reason for delay"); *Blackman v. District of Columbia*, 456 F.3d 167, 174-75 (D.C. Cir. 2006) (holding that "express direction that there is no just reason for delay" and "express direction for the entry of judgment" under Rule 54(b) are "bright-line requirement[s] that prohibit us from implying a Rule 54(b) determination") (quotation marks omitted). Since March 2009, the Individual Defendants have been free to move for a Rule 54(b) order of final dismissal. But they have not done so.

Accordingly, the March 2009 dismissal of the Individual Defendants remains a "nonfinal order on the status of parties in a multi-party case." *Dooley*, 152 F.R.D. at 424. Like Defendant Basil in *Dooley*, then, the Individual Defendants remain "part[ies] to the case," even though they have been dismissed. *Id.* And, just as in *Dooley*, the Plaintiffs here are permitted to serve the Individual Defendants with an amended complaint that adds allegations – namely, that the Individual Defendants are no longer serving as diplomats and therefore are not entitled to full diplomatic immunity – that revive the claims against them.

The Court's holding in its April 27, 2011 Minute Order that it improperly reinstated the Individual Defendants under Rule 54(b) does not preclude the Plaintiffs from reviving their claims against the Individual Defendants through service of the Amended Complaint. In the Minute Order, the Court ruled that the DRA required it to dismiss the Individual Defendants upon finding that they were immune at the time of service. Therefore, in the Court's view, the

initial dismissal of the Individual Defendants was correct, and though the Court could revise that dismissal order under Rule 54(b), it did not have a basis for doing so. The Plaintiffs are not arguing now that the service of the Amended Complaint on the Individual Defendants somehow renders the Court's March 2009 dismissal improper. Rather, they are arguing that, because the March 2009 dismissal was not *final* under Rule 54(b), the service of the Amended Complaint on the Individual Defendants brings the claims against them back into the case. *See Dooley*, 152 F.R.D. at 424.

Finally, the fact that the Court dismissed the claims against the Individual Defendants under the DRA, rather than under Fed. R. Civ. P. 12(b)(6), does not justify deviating from *Dooley*. First, the Court's finding that the Individual Defendants were immune at the time of service does not transform the Court's March 2009 dismissal into a final dismissal under Rule 54(b). Because this Court has not designated its dismissal of the Individual Defendants as a final dismissal, the Individual Defendants are still parties to the case. The legal basis for the Court's dismissal is irrelevant to that analysis.

Second, even if the basis for the Court's dismissal were relevant to this analysis, it would not alter the outcome. The Court's dismissal under the DRA is based on its finding that the Individual Defendants were entitled to diplomatic immunity at the time of service. Diplomatic immunity protects diplomats from the receiving state's "civil and administrative jurisdiction." Vienna Convention on Diplomatic Relations, Art. 31(1). Thus, dismissal under the DRA is equivalent to dismissal under Fed. R. Civ. P. 12(b)(2) for "lack of personal jurisdiction." Courts routinely dismiss claims against defendants for lack of personal jurisdiction while granting the plaintiffs leave to amend their complaint to revive those claims. *See, e.g.*, *St. Luke's Episcopal Hospital v. Louisiana Health Serv. & Indem. Co.*, Civ. A. No. H-08-1870, 2009 WL 47125, at

*12 n.6 (S.D. Tex. Jan. 6, 2009) (citing Charles Wright's *Federal Practice and Procedure* and three Fifth Circuit cases for the proposition that the court could grant leave to amend after dismissing a defendant for lack of personal jurisdiction); *Salt Optics, Inc. v. Jand, Inc.*, No. SACV 10-0828, 2010 WL 4961702, at *4 n.1 (C.D. Cal. Nov. 19, 2010) (dismissing complaint for lack of personal jurisdiction but granting leave to amend to "cure[] the deficiencies identified by the Court"). This situation is no different: because the Court's dismissal of the Individual Defendants for lack of personal jurisdiction under the DRA was not a final dismissal under Rule 54(b), the Plaintiffs may revive their claims against the Individual Defendants through service of an Amended Complaint.

## CONCLUSION

For the reasons provided above, the Plaintiffs respectfully recommend that the Court: (1) confirm that the Plaintiffs can proceed against the Individual Defendants in this case by serving them with the Amended Complaint; (2) hold a status conference within twenty days, by which time counsel for the Defendants will have contacted the Individual Defendants so that they may confirm that the service packets have been received; and (3) establish a briefing schedule for the Individual Defendants' motion to dismiss, if any.

Dated: May 13, 2011

Respectfully submitted,

/s/ Lorelie S. Masters___________________

Lorelie S. Masters (D.C. Bar No. 358686)
Martina E. Vandenberg (D.C. Bar No. 476685)
Matthew E. Price (D.C. Bar No. 996158)
Bharat Ramamurti (D.C. Bar No. 996546)
JENNER & BLOC K LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001

Lenora M. Lapidus*
Galen Sherwin*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
WOMEN'S RIGHTS PROJECT
125 Broad Street, 18th Floor
New York, NY 10004

Steven Macpherson Watt*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
HUMAN RIGHTS PROGRAM
125 Broad Street, 18th Floor
New York, NY 10004

*Counsel for Plaintiffs Mani Kumari Sabbithi, Joaquina Quadros, and Gila Sixtina Fernandes*

*Admitted *pro hac vice*

## CERTIFICATE OF SERVICE

I, Lorelie S. Masters, hereby certify that on May 13, 2011, I caused to be served via e-mail per the parties' written agreement, a true and correct copy of the foregoing **Plaintiffs' Status Report on Service in Response to the Court's April 27, 2011 Minute Order** on the following:

Thomas B. Wilner, Esq.
Neil H. Koslowe, Esq.
Perry S. Bechky, Esq.
SHEARMAN & STERLING LLP
801 Pennsylvania Avenue NW Suite 900
Washington, DC 20004

/s/ Lorelie S. Masters
Lorelie S. Masters
D.C. Bar No. 358686
JENNER & BLOCK LLP
1099 New York Avenue NW Suite 900
Washington, DC 20001
Tel: (202) 639-6076
Fax: (202) 661-4924